## UNITED STATES v. GOLDSTEIN.

### (District Court, W. D. Virginia. July 5, 1904.)

**1. BANKRUPTCY—RULE FOR CONTEMPT—SUFFICIENCY.**

A rule requiring a bankrupt to show cause why he should not be punished for contempt for refusing to answer "sundry questions" put to him during his examination before the referee is sufficient, although it does not set out the questions, where it refers to the transcript filed with the certificate of the referee, from which they fully appear.

**2. SAME—CONTEMPT—ACTING UNDER ADVICE OF COUNSEL.**

The fact that a bankrupt acted under the advice of counsel in refusing to answer questions put to him in his examination before the referee palliates, although it does not excuse, his offense, if the refusal was such as to constitute a contempt of court.

**3. SAME—REFUSAL OF BANKRUPT TO ANSWER INCRIMINATING QUESTIONS—CONSTITUTIONAL PRIVILEGE.**

The provision of Bankr. Act July 1, 1898, c. 541, § 7, cl. 9, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], that no testimony given by a bankrupt on his examination "shall be offered in evidence against him in any criminal proceeding," does not deprive a bankrupt of the right to claim his constitutional privilege of refusing to answer a question, where the answer might tend to incriminate him' by showing that he had committed an offense under other provisions of the act; nor is the filing of a petition in voluntary bankruptcy a waiver of such privilege.

**4. SAME—CRIMINAL OFFENSES—CONCEALMENT OF PROPERTY FROM TRUSTEE.**

The concealment of property by a voluntary bankrupt after his adjudication, although before the appointment of a trustee, is a concealment from the trustee, which, if knowingly and fraudulently done, constitutes a criminal offense, under Bankr. Act July 1, 1898, c. 541, § 29b, cls. 1, 2, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433].

In Bankruptcy. On rule against bankrupt for contempt.

Jas. E. Edmunds, Whitehead & Whitehead, F. W. Whitaker, and H. M. Ford, for creditors.

Jno. G. Haythe, for respondent.

McDOWELL, District Judge. On May 16, 1904, the defendant here filed his voluntary petition in bankruptcy. As the judge was then absent from the district, the clerk of the court made the order of reference and the referee made the order of adjudication on May 17, 1904. On May 26th, upon an affidavit that the bankrupt was concealing and removing his property, the referee appointed a receiver and directed him to take possession of the property. On June 8th a trustee was appointed. At the first meeting of creditors, held on June 8th, the bankrupt was partially examined. The bankrupt is a foreigner, recently landed in this. country, ignorant of our laws and customs, and his counsel was out of the city at the time of this first meeting. After some examination of the bankrupt the hearing was adjourned to a later date. At the next meeting the counsel for the bankrupt was present, but he had only a few moments prior to the meeting returned to the city and had had no opportunity to consult with his client. At the second examination the bankrupt, under the advice of his counsel, declined

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 405.

to answer sundry questions put to him, and claimed his constitutional privilege to refuse to criminate himself. The referee having ruled that the questions should be answered, and the bankrupt still declining to answer, the referee announced that he would certify the facts to this court, in order that it might be determined whether or not the bankrupt was guilty of contempt, and for punishment, if such were determined to be the case. Later, but before the certificate of the referee had been prepared, the bankrupt by his counsel offered to answer the questions, and accompanied the offer with an explanation that his counsel—who had not had an opportunity to confer with the bankrupt, and had been of opinion that it would criminate him to answer the questions—now advised him that he could safely answer the questions. Upon the coming in of the certificate of the referee, accompanied by a full shorthand report of the proceedings before him, I issued a rule requiring the bankrupt to appear and show cause why he should not be punished for contempt. On the day set the bankrupt appeared, filed his demurrer to the rule and his answer, and arguments of counsel were heard. The rule, so far as now material, reads as follows:

"United States v. M. Goldstein.

"Whereas, from the certificate of R. C. Blackford, referee in bankruptcy, dated June 17, 1904, and the transcript accompanying the same, it is made to appear that M. Goldstein, of Lynchburg, Virginia, is guilty of contempt, in that he declined to answer sundry questions put to him during his examination before said referee, after having been directed by said referee to answer the same: It is therefore ordered that said M. Goldstein do appear personally before this court, at the United States court room in Lynchburg, on June 28, 1904, at 10 o'clock a. m., and show cause, if any he has, why he should not be punished for said contempt.

"It is further ordered that a copy hereof be served on said M. Goldstein. * * *"

On the hearing the demurrer was not insisted on. But, if it had been, I am of the opinion that the rule is sufficient. It refers to the transcript of proceedings filed by the referee in the clerk's office and open to inspection. "Id certum est, quod certum reddi potest." By reference to the transcript the entire matter constituting the alleged contempt could have been found, set out in extenso. The answer, disavowing any want of respect for the referee and any intent to commit a contempt, sets up in explanation the rather unusual situation in which the defendant's counsel was at the time of the examination, repeats the offer to now testify, and also insists that the refusal to testify, under the circumstances as they existed at the time of the second examination of the bankrupt, did not render the defendant guilty of contempt. The case before us brings up some interesting questions:

1. The offer to testify, made after the adjournment of the examination before the referee, would not, in my opinion, purge the contempt, if the defendant were guilty of contempt in his refusal to answer. On the other hand, the subsequent offer to testify is an admission that the defendant could have answered the questions without danger to himself. In this case, however, because of the ignorance of our laws on the part of the defendant, and the ignorance by his counsel at the time of the facts, I think it proper to consider the questions involved as if there had been no subsequent offer to testify.

2. The fact that the defendant, in refusing to testify, acted under the advice of counsel, certainly palliates the offense, if it were such; but it does not excuse it. 4 Encyc. Pl. & Pr. 792, and authorities there cited.

3. It is argued that the bankrupt act prevents a bankrupt from claiming the constitutional privilege. Section 7, cl. 9, of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), concludes:

"But no testimony given by him [the bankrupt] shall be offered in evidence against him in any criminal proceeding."

While it may be conceded that this clause would prevent the bankrupt's testimony from being given in evidence against him in a criminal proceeding either in a federal or a state court, still it does not go far enough to afford him complete immunity. Except that this clause applies, as I think, to prosecutions in state courts, as well as in federal courts, it is not even as broad as section 860, Rev. St. U. S. [U. S. Comp. St. 1901, p. 661]. And that statute, in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, was held not to afford complete immunity, and not to deprive a witness of his right to refuse to give testimony which might be used indirectly to his prejudice in a subsequent criminal prosecution. In that case it is said:

"It remains to consider whether section 860 of the Revised Statutes [U. S. Comp. St. 1901, p. 661] removes the protection of the constitutional privilege of Counselman. That section must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. It follows that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence or used against him or his property in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. This, of course, protected him against the use of his testimony against him or his property in any prosecution against him or his property, in any criminal proceeding, in a court of the United States. But it had only that effect. It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted."

To the same effect see Cullen v. Commonwealth, 24 Grat. 624, one of the numerous cases cited in the Counselman Case. In that case Dr. Cullen was called before the grand jury and directed to testify concerning a duel between McCarty and Mordecai. He claimed his privilege, and declined to answer. After being called before the judge of the hustings court, the witness was by the judge directed to testify, and, as he declined, he was sentenced to be fined and imprisoned for contempt. The Court of Appeals reversed the lower court. The state statute provided that every person connected with a duel could be compelled to testify, but that any "statement made by such person as such witness shall not be used against him in any prosecution against himself." In the opinion it is said:

"Whether such constitutional privilege can be taken away by the Legislature at all, on any terms of indemnity, is a question not necessary to be now decided. But we are all clearly of opinion that before it can be taken away there must be absolute indemnity provided, and that nothing short of complete amnesty to the witness—an absolute wiping out of the offense as to him, so that he can no longer be prosecuted for it—will furnish that indemnity. We do not think the act of assembly referred to furnishes such indemnity. It only provides that the 'statement' made by the witness shall not be used against him in a prosecution against himself. Now, it is apparent that, without using one word of that statement, the attorney for the commonwealth might in many cases, and in a case like the present inevitably would, be led by the testimony of the witness to means and sources of information which might result in criminating himself. This would be to deprive him of his privilege without indemnity. We are of the opinion, therefore, that the act of assembly aforesaid, failing to afford complete indemnity, does not deprive the plaintiff in error of his constitutional privilege."

Certainly the foregoing authorities are sufficient to enable us to say with absolute certainty that the immunity given by section 7, cl. 9, of the act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), is not sufficient to deprive a bankrupt of his constitutional privilege. It is true that a bankruptcy proceeding is not a criminal case. But the constitutional exemption is a delusion if a man can be required to criminate himself merely because it is a civil case in which he is called on to testify.

4. In deciding whether or not there was a contempt, I think the test is: Might an answer to the question have a tendency to criminate the witness? When a trial judge rules that a question is to be answered, and imposes punishment for a refusal to answer it, the appellate court on appeal uses this test. Cullen v. Com., 24 Grat. 624; Temple v. Com., 75 Va. 892.

Act July 1, 1898, c. 541, § 29b, cls. 1, 2, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433] reads:

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently

"(1) Concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy; or

"(2) Made a false oath or account in, or in relation to, any proceeding in bankruptcy."

It is true that clause 1 applies to concealing property from the trustee, and that in the case at bar the alleged concealment was prior to the appointment of the trustee. But when a person files his voluntary petition in bankruptcy, he knows that a trustee will be appointed, and that such trustee takes title as of the date of the adjudication. It follows that a concealment of property after the adjudication, even if before the appointment of the trustee, is a concealment from the trustee.

I have carefully examined and considered the questions which the bankrupt refused to answer. Counsel propounding these questions undoubtedly believed that in answering them truthfully the bankrupt would reveal that he had either concealed his property or had knowingly omitted several valuable articles from the schedules of his property. Beyond question his answers might have tended to show that he had committed one or both of these offenses. It follows that the bankrupt had a right to decline to answer the questions, and cannot be held in

contempt for refusing so to do, unless because of the following contention:

5. It is suggested that one who files a voluntary petition in bankruptcy, who in theory, at least, knows that he may be required to make full disclosures under section 7, cl. 9, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), is in the position of a defendant in a criminal case who voluntarily takes the witness stand in his own behalf, and that, having waived his constitutional privilege in respect to self-crimination, he cannot refuse to answer any question. For the sake of argument it may be conceded—though I have not referred to, and have not found, any Virginia decision so holding—that, when a defendant in a criminal cause voluntarily goes on the stand and testifies in his own behalf, he cannot, on cross-examination, claim his privilege and refuse to answer; and while there is some likeness between the two cases, the analogy is not perfect. It seems to me that the position of the bankrupt is rather more like that of a defendant in a criminal case, who has proposed to testify in his own behalf, and who before so doing concludes to claim his constitutional privilege.

Where the question is such that it is obvious that the refusal to answer is on the ground that the answer would tend to show that the bankrupt has committed one or both of the offenses set out in section 29b of the act, it seems to me that the refusal to testify carries with it a sufficient penalty, without invoking the doubtful doctrine of waiver and insisting on a punishment as for contempt. The discharge in bankruptcy is the ultimate benefit sought by the voluntary bankrupt. If he has committed either of the above-mentioned offenses, he will be denied a discharge. A refusal to answer on the ground above stated is an admission that such offense has been committed.

In a case such as we have here, therefore, I am of opinion that filing the petition is not a final and irrevocable waiver of the constitutional privilege. In a case where the refusal is on the ground that to answer would tend to show that the bankrupt had committed some crime or offense other than the offenses created by the bankrupt act, the question is a nicer one. But, as it does not arise here, I shall not discuss it.

6. The case here is somewhat complicated by the subsequent offer to testify. But, under the unusual circumstances here, I think it proper to act on the theory that the bankrupt at the time of the refusal in good faith believed that his answers to the questions would criminate him. As the questions were such that answers thereto might have a tendency to show the bankrupt guilty of the offenses specified in section 29b of the act (Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433]), I must conclude that he is not guilty of contempt.

The rule will be discharged.