## In re EATON.

### (District Court, N. D. New York. September 30, 1901.)

### No. 25.

1. BANKRUPTCY—DISCHARGE—FALSE OATH.

To render the verification of schedules from which property has been omitted the making of a false oath within Bankr. Act 1898, § 29b, cl. 2, which will defeat the right of the bankrupt to a discharge, the omission must have been knowingly and fraudulently made.

2. SAME—FILING AMENDED SCHEDULE.

The fact that a bankrupt obtains leave and files an amended schedule including property omitted from his former schedule is not conclusive evidence that the omission was not made knowingly, and with fraudulent intent, so as to overcome the charge of making a false oath to the original schedule, though it may be considered as tending to show absence of any wrongful intent.

3. SAME—EVIDENCE CONSIDERED.

A bankrupt omitted from his schedule certain stock which he owned of the par value of $3,000, which some two years before he had sent to an agent for sale. It was then subject to sale for unpaid assessments made thereon. Subsequently the bankrupt had become insolvent, and all his property had been placed in the hands of a receiver. Pending the bankruptcy proceedings, he was called as a witness in a suit in a state court, and testified to such facts, and that he had forgotten the stock, not having regarded it of value, and did not know what had been done with it. He subsequently filed an amended schedule, in which he included the stock, and offered to surrender it to his trustee. *Held* that, even if the testimony of the bankrupt in the state court be considered, it did not establish the charge of knowingly and fraudulently making a false oath to the original schedule, which would defeat his right to a discharge.

In Bankruptcy. On motion to confirm report of referee recommending the discharge of the bankrupt.

The first and second objections to the discharge are the only ones now in controversy. The first charges that the bankrupt was the owner of thirty shares of the stock of the Park Ridge Land Company, the par value being $100; that no mention of said stock was made in his schedules and that on the 1st day of June, 1900, he, knowingly and fraudulently, made a false oath by verifying his schedules with the said property omitted. The second objection charges that one Elmer L. Eaton was indebted to the bankrupt in the sum of $8,000, which indebtedness was omitted from the schedules, knowingly and fraudulently, by said bankrupt, he verifying the schedules with said indebtedness omitted. On the 25th of January, 1901, the bankrupt applied for leave to file amended schedules, and, on the 29th, amendments were filed in which a full statement is made of the property omitted as aforesaid, the bankrupt stating that the certificates of stock in his possession will be delivered to his trustee in bankruptcy. The issues arising upon the bankrupt's petition for a discharge and the objections thereto were referred to the referee, who filed a report on the 30th of August, 1901. holding that the amendments cured the objections to the discharge and recommending that the discharge be granted. Exception having been taken to this ruling the court returned the matter to the referee, holding that

the amendments did not operate ipso facto to relieve the bankrupt from the consequences of having made a false oath. On the second hearing counsel for the objecting creditor offered to prove that in a suit, pending in the supreme court of the state of New York, in which Robert F. Livingston, as receiver, was plaintiff, and the bankrupt and others were defendants, which suit was tried in the autumn of 1900, the bankrupt made statements respecting his property which tend to prove the truth of the allegations of the said objections. The referee held that the testimony of the bankrupt in the said suit was inadmissible, and, further, that no admission of the bankrupt upon that trial could be proved, either by the minutes of the trial or by oral testimony. The referee again overruled the objections and recommended a discharge. The case is now here upon the record made at the second hearing before the referee, upon his report and exceptions thereto.

Myron G. Bronner, for bankrupt.
Walter W. Cooper, for opposing creditor.

COXE, District Judge (after stating the facts). But one question is presented, namely, did the bankrupt knowingly and fraudulently make a false oath in verifying schedules which omitted all reference to the Park Ridge stock and the indebtedness due him from Elmer L. Eaton? There can be no doubt that the verification of schedules from which valuable property has been knowingly omitted constitutes a false oath under subdivision 2, § 29b of the bankruptcy act, but the omission must have been made with fraudulent intent. In re Becker, 5 Am. Bankr. R. 438, 106 Fed. 54, and cases cited; In re Bryant, 5 Am. Bankr. R. 115, 104 Fed. 789. It being conceded that the Park Ridge stock and the Elmer debt were omitted, the sole question is, was it done knowingly and fraudulently? The filing of the amended schedule, giving a full statement of the property in question and offering to deliver the certificates of stock to the trustee, is evidence tending to show the absence of an unlawful intent, but it is by no means a conclusive answer to the objections. A ruling that a bankrupt may verify false schedules and, upon discovery, avoid the consequences of his act by an amendment, is contrary to the spirit of the law which aims to relieve honest debtors only. If the law were so construed a bankrupt runs no risk in making a fraudulent return of his property supported by a false oath, for, if undiscovered, he secures the fruits of his wrongdoing, and, if detected, he can still obtain his discharge by amending his schedules so as to contain the information which the creditors have unearthed in spite of his efforts at concealment. On the other hand omissions frequently occur inadvertently and a prompt acknowledgment of the mistake, accompanied by a return of the property, are circumstances tending to show good faith. The testimony in the Livingston suit, offered at the hearing before the referee, has been submitted and carefully examined by the court. The following facts appear: In 1893 or 1894 the bankrupt purchased 60 shares of the stock of the Park Ridge Land Company for which he paid $6,000. In 1896 he considered this stock worth par. Thirty shares were pledged in 1898 as security to pay a note of $4,000, which the bankrupt owed his wife, and 30 shares were sent, prior to 1898, to Elmer L. Eaton at Buffalo to be disposed of by him. The bankrupt testified that at the time of making out his schedules he did not know what had be-

come of the Park Ridge stock, or its value, or whether Elmer had disposed of it or not; he had in fact forgotten the transaction and did not recall it until called upon to testify in the Livingston suit. In 1898 the bankrupt became involved in financial difficulty and made no further inquiries about the stock in Elmer's hands. The stock was subject to assessment and there were a number of calls, but no payments were made. In February, 1897, the stock was pledged to a trustee for the payment of taxes, interest and expenses, the instrument transferring the stock providing that in case of failure to make payments the trustee might sell the stock at public or private sale. On October 13, 1899, a receiver was appointed by the state court of all the property of the bankrupt. The foregoing is a synopsis of the testimony of the bankrupt in the Livingston case and contains all the salient facts bearing upon the present issue. The testimony in the Livingston case bearing upon the omission of the Elmer L. Eaton indebtedness is absolutely insufficient to establish fraud and need not be discussed. Regarding the omission of the Park Ridge stock the case is not so plain, and yet the court is clearly of the opinion that the testimony falls short of establishing fraudulent intent. There is nothing to show the value of the stock in June, 1900, when the schedules were filed. It may have become utterly worthless at that time. It had been transferred to a trustee who was authorized to sell it to satisfy unpaid assessments. A receiver had been appointed of all the bankrupt's property, including the stock. The account between the bankrupt and Elmer L. Eaton, who held the certificates and who was authorized to dispose of them, was apparently involved in an inextricable tangle. In these circumstances a perfectly honest man might have thought that the stock was of no value and have forgotten to mention it in his schedules. The bankrupt swears that this is precisely what took place. He supposed, he says, that the stock was of no value to himself or his creditors and had forgotten its existence when he verified the schedules.

Assuming that all the testimony offered by the objecting creditor is competent, he has failed to establish the essential ingredients of the offense, namely, that the omission was made knowingly and fraudulently. In fact, the testimony offered, which is the testimony of the bankrupt himself, tends to establish his innocence rather than his guilt. The case has been examined as if this testimony were properly before the court. As stated at the argument the court will not discharge a bankrupt if convinced that legal evidence is at hand which will prove that he is unworthy to receive a discharge. The principal facts referred to in the Livingston case can be established, without recourse to that record, by competent evidence in this proceeding, and if convinced that these facts constitute a valid bar to the discharge an opportunity to present them would be given.

Counsel for the objecting creditor stated at the argument that if the facts in the Livingston case were admitted he would regard his case as closed. The court is convinced that with the case made out precisely as the objecting creditor requests, it would not present a valid reason for refusing the discharge. The situation is somewhat similar to that which arises when an application to present

newly-discovered evidence is denied on the ground that the evidence if received could in no way change the result. The court expressly declines to decide that the testimony of a bankrupt taken in a contemporaneous proceeding in a state court can be introduced in evidence to defeat his discharge. It decides simply that if all the facts stated in the testimony were properly in evidence they would not defeat the discharge.

The request of the objecting creditor that the matter be again sent back for new testimony cannot be granted. He has had two hearings before the referee and, practically, a third hearing before the court upon all the testimony offered. He has been treated with extraordinary liberality and it would be an injustice to the bankrupt to permit the creditor to make another effort to defeat the discharge. The report of the referee is confirmed and the discharge is granted.