# IN RE A. RAUCHENPLAT, Bankrupt.

DISCHARGE FROM BANKRUPTCY—JURISDICTION OF REFEREE—APPEAL—FAILURE TO SCHEDULE ASSETS AND KEEP PROPER BOOKS OF ACCOUNT—POLICIES OF LIFE INSURANCE.

1. A referee in bankruptcy aids the court like a master in chancery. He, however, has no jurisdiction to determine an application for a discharge.

2. It is not required that the bankrupt's books shall be kept in the most scientific manner, but only in such a way that his condition may be substantially ascertained; even if badly kept, it is no ground for refusing a discharge unless fraudulent purpose on the part of the bankrupt appears.

3. A bankrupt is not guilty of having sworn falsely or of fraudulent intent in failing to enumerate in his schedule of assets two life insurance policies on his own life, payable only after proof of his death, to his wife and children, which are not subject to assignment or cash surrender value, and on which nothing is payable to him in his lifetime, and in which he has no transferable or actual pecuniary interest, or any that could be reached by judicial process.

4. Specifications must be clear and definite, and not vague and general. Great latitude is allowed in evidence in endeavoring to find a bankrupt's assets; but the court or referee has a discretion as to how far this should proceed.

February 25, 1903.

*Mr. F. H. Dexter,* attorney for opposing creditors.

*Messrs. N. B. K. Pettingill* and *J. M. Keedy,* attorneys for bankrupt.

HOLT, Judge, delivered the following opinion:

The opinion and order granting a discharge was entered here-
in on June 12th, 1902. Motion for rehearing was made on
June 18th, 1902. The ground of it is that the referee exceeded
his jurisdiction in reporting to the court that the objections of
the creditors to the discharge are not sustained by the evidence
taken by him. The order of reference directs him to report the
facts, with the evidence taken, to the court, together with his
findings as to the same.

The application for discharge must, by § 14 of the bankrupt
law, and general order in bankruptcy No. 12, § 3, be heard and
decided by the judge of the court. The referee has no jurisdic-
tion to determine the question; but the court may refer the case
to him generally for a report. He aids the court like a master
in chancery. He cannot finally determine the question of dis-
charge or nondischarge; but he may be ordered to report the
facts and his recommendation or conclusion as to the matter.
This is merely to aid the judge, and the court then determines
the matter. The practice in bankruptcy is much like that in
equity, and it is hardly supposable that the lawmaking power in-
tended that a court, if it saw proper, should not avail itself of
such aid. Re Kaiser, 99 Fed. 689.

The motion for a rehearing is, therefore, overruled.

A petition of the opposing creditors asking separate findings
of fact and conclusions of law was also filed on June 18th, 1902.
When the opinion herein was rendered, this was not asked by
either party; but general order No. 36 in bankruptcy provides
that it shall be done in every case, at or before the entering of
the judgment, in which either party is entitled to take an appeal
to the Supreme Court of the United States. It was overlooked
in this case. No discharge has been issued to the bankrupt.

Re Rauchenplat.

The order heretofore made granting a discharge is, therefore, set aside, and this finding of facts is now entered, to wit:

The bankrupt, A. Rauchenplat, had been a merchant for some eight years prior to January, 1899. He then obtained what is known under the local law as a "suspension of payments." After this he bought no goods and transacted no business save to sell what merchandise was on hand at the time of the suspension of payments, and make collections and pay his creditors. After the suspension of payments he kept no regular set of books, and transactions were not always entered when they occurred; but all of his business, both before and after the suspension, is shown in some manner upon his books; in other words, they were informally kept. They were mainly kept by clerks, and the money realized was paid out upon his debts. It is evident there was no purpose on the part of the bankrupt to keep a false set of books or to conceal his condition. The manner of keeping them is explained, and is not suspicious.

From February 1st, 1899, the bankrupt has been a salaried clerk with a banking firm, Fritze, Lundt, & Company, with whom he had accounts before he obtained a suspension of payments. Full opportunity was given before the referee to examine his account with said firm prior to the suspension of payments; but not as to his salary account since then with them, the nature and amount of which was, however, fully in evidence. The bankrupt was fully examined and cross-examined.

There were two policies of insurance upon the bankrupt's life for $5,000 each, one issued February 24th, 1894, and the other August 4th, 1896, he being thirty-five and thirty-seven years old, respectively, at their issuance. Each is payable only to his wife and children sixty days after proof of his death. One is an ordinary life policy, while the payment of the premium upon the other is but for twenty years. A commuted policy may

issue as to each after a certain period. They are not subject, however, to assignment or any cash surrender value. By the contracts nothing is payable in any event to the bankrupt during his lifetime, and he has no transferable interest in them. These are the facts to be considered upon the hearing of the objections by the creditors to the bankrupt's discharge,—and upon them I base the following conclusions: First. That the bankrupt did not, with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, fail to keep books of account from which his true condition might be ascertained. It is not required that a bankrupt's books shall be kept in the most scientific manner, but only in such a way that the condition of his affairs may be substantially ascertained; and even if badly kept, it is not ground for refusing a discharge unless there was a fraudulent purpose in so doing on the part of the bankrupt. Second. That he is not guilty of having sworn falsely in failing to enumerate the two policies of life insurance as a part of his assets. Clear and convincing evidence is required to refuse a discharge upon this ground. Not only must there be an omission to enumerate the property in the schedules, but there must be a fraudulent intent to do so. Re Eaton, 110 Fed. 731. When, however, the omission is once shown the bankrupt should explain it. He must in good faith bring his entire property into court; no *mala fides* must appear; he must act with absolute honesty; if he does so, then the law relieves him from misfortune and gives him a discharge. If his honesty has cringed to his interest, and he is scheming to hold property, and yet be relieved from his debts, he is not entitled to consideration. In this instance the insurance was not payable to him, nor was it assignable. The policies had no surrender value, and the bankrupt had no pecuniary interest in them. Even admitting he had, it was not appreciable, but so vague and uncertain that a charge of fraudulent

Re Rauchenplat.

concealment cannot fairly be predicated upon their omission from the schedule. It cannot well be presumed any fraud was intended by him. He could well have believed in good faith that he had no interest in them, and, in fact, this is true. He had no actual pecuniary interest, or any that could have been reached by judicial process. Collier, Bankr. p. 470.

It may be added that the specifications of objections in this case raise but the two matters above considered; to wit, as to the bankrupt having failed to schedule his entire assets, and his having failed to keep proper books of account. In fact they are, perhaps, not sufficient to raise even these questions; but they have been considered. Specifications must be clear and definite, not vague and general. Great latitude should be allowed in evidence, however, to find a bankrupt's assets, or unearth fraud; but the court, or if acting by its referee, has a discretion how far this should proceed, and the referee had a legal discretion as to the extent of the examination of the books or the witnesses, and it does not appear there was any abuse of it.

A judgment will be entered granting the bankrupt, A Rauchenplat, a discharge.