## GRETSCH v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. March 24, 1916.)

### No. 2003.

1. BANKRUPTCY ☞493—CRIMINAL OFFENSES—"CONCEALMENT" OF PROPERTY.

"Concealment" of property by a bankrupt from his trustee, either by conversion of the property or by secretly retaining it, is a positive act committed at some time or other with respect to a physical thing, and wherever that act is done there alone the court has jurisdiction of the offense.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 910; Dec. Dig. ☞493.

For other definitions, see Words and Phrases, First and Second Series, Concealment.|

2. BANKRUPTCY ☞485—CRIMINAL OFFENSES—CONCEALMENT OF PROPERTY— OMISSION FROM SCHEDULE.

Since the criminal offense of fraudulently concealing property from the trustee in bankruptcy, prescribed by Bankr. Act July 1, 1898, c. 541, § 29b, cl. 1, 30 Stat. 554 (Comp. St. 1913, § 9613), is in the same subsection with clause 2, which prescribes the offense of making a false oath or account in relation to any proceeding in bankruptcy, it must be presumed that they refer to different offenses, and that the mere omission of property from the schedule is not a concealment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 906, 908; Dec. Dig. ☞485.]

3. BANKRUPTCY ☞493—CRIMINAL OFFENSES—CONCEALMENT OF PROPERTY— VENUE.

Where the testimony fails to show that any property concealed by a bankrupt from his trustee was ever in the district in which the voluntary petition in bankruptcy was filed, the offense was not committed there, and a prosecution for the offense in that district deprived the bankrupt of his right under Const. Amend. art. 6, to be tried by a jury of the district in which the offense was committed, though that court had acquired jurisdiction over him and his estate, wherever situated, for all purposes of bankruptcy, under Bankr. Act, § 5c. (Comp. St. 1913, § 9589).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 910; Dec. Dig. ☞493.]

Buffington, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Mark J. Gretsch was convicted of fraudulently concealing property from his trustee in bankruptcy, and he brings error. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Elgin L. McBurney, of New York City, for plaintiff in error.

J. Warren Davis, U. S. Atty., of Trenton, N. J.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The defendant (plaintiff in error) was tried and convicted in the District of New Jersey for a criminal violation of the Bankruptcy Act. By this writ he raises the question, whether his constitutional right to a trial by a jury in the district wherein the crime was committed, has been invaded.

It appears in the testimony that Birnbaum and the defendant Gretsch formed a partnership in the jewelry business in February, 1914, which ended in bankruptcy in August of the same year. Their salesrooms were in the City of New York. The amount of capital contributed by Birnbaum was inconsiderable, and whether any capital was contributed by Gretsch was a controverted question. By statements of their financial condition to trade associations, falsely made by Birnbaum at the instigation or with the acquiescence of Gretsch, the firm secured credit and purchased jewelry, principally diamonds, in large quantities and of considerable value. When the partnership ended in bankruptcy there was a discrepancy of about $20,000 between the value of goods purchased and receipts from goods sold. Jewelry in that amount had vanished. When the petition was filed, Birnbaum and Gretsch had in their safe in New York only $1,400 worth of jewelry. This likewise disappeared.

Birnbaum was a resident of the State of New Jersey, and Gretsch of the State of New York. They filed a voluntary petition in bankruptcy in the District Court of the United States for the District of New Jersey. In due course they were adjudged bankrupt. It then became their duty to disclose and turn over their property to their trustee. They neither delivered their property to their trustee nor included it in their schedule. Thereupon an indictment was found under section 29b, cl. 1, of the Bankruptcy Act of 1898, charging them with having knowingly and fraudulently concealed from their trustee property belonging to the bankrupt estate, and laying the offense in the District of New Jersey. Birnbaum pleaded guilty; Gretsch stood trial and was convicted. The principal witnesses at the trial were the defendants themselves. Each charged the other with guilt of the crime for which they were jointly indicted. It is not necessary to recite their testimony. It is enough to say that the testimony of whichever one is believed, supported by the corroborating circumstances, was sufficient for a jury to find, that in the formation of the partnership and the conduct of the business, the partners jointly pursued a scheme to defraud their creditors, and each separately pursued a plan to defraud the other, with the result that from $10,000 to $20,000 of partnership property was withheld and fraudulently concealed from the trustee in bankruptcy.

There is no question that the goods were concealed. The question is, whether they were concealed within the territorial jurisdiction of the court that tried the defendant, and whether the defendant's constitu-

tional right to a trial by a jury of the district wherein the crime was committed, was invaded. Article VI, Constitution of the United States.

The undisputed facts upon which this question is raised and argued are: The defendant was indicted and tried for concealing property in the District of New Jersey, when the property alleged to have been concealed had never been in that district; the defendant knowingly and fraudulently omitted to include the property in his schedules and failed to surrender it to his trustee in bankruptcy.

When Gretsch submitted himself to the bankruptcy jurisdiction of the District Court in the district in which his partner Birnbaum was resident, that court unquestionably acquired jurisdiction of him and of his estate wheresoever situated, for all purposes of bankruptcy. Bankruptcy Act of 1898, § 5c; In re Murray (D. C.) 96 Fed. 600; In re Blair (D. C.) 99 Fed. 76. The government, however, goes further and maintains that the jurisdiction of the District Court thus acquired over Gretsch in bankruptcy extends to him and embraces his criminal offenses against the Bankruptcy Act wheresoever committed, and that the physical concealment in a district of New York of property which had never been in the District of New Jersey was an offense committed within the jurisdiction of the District Court for the District of New Jersey.

At the trial, the main controversy centered on the physical concealment of the property that disappeared from the defendant's safe in New York, less regard being given to the very considerable amount of property that otherwise disappeared. On review, there developed two theories as to what constitutes fraudulent concealment of property from a trustee. The first contemplated concealment of property by physical conversion; the other merely by a failure to reveal. We feel that without other circumstances neither constitutes fraudulent concealment, though either may be evidence of it.

[1] The physical conversion of bankrupt assets may be evidence, and perhaps the best evidence, of the concealment of such property. Concealment of property, however, may be accomplished without conversion. Secretly retaining property already in possession, and withholding it from the trustee under circumstances indicating an intention to defraud and conceal, may amount to concealment within the meaning of the statute. But whether property be concealed by conversion or retention, it must be at hand. Concealment is a positive act committed at some time or other with respect to a physical thing. It must, therefore, be done somewhere, and wherever done in violation of the statute, there and there alone has the court jurisdiction of the offense.

[2] Against the theory of conversion, it is urged that property is concealed within the meaning of the statute when the bankrupt omits it from his schedule. We are slow to believe that the mere omission to reveal constitutes concealment. When property is innocently omitted from a schedule, as by mistake or inadvertence, the courts are prompt to allow amendments. In re McKee (D. C.) 165 Fed. 269; In re Bean (D. C.) 100 Fed. 262; In re Eaton (D. C.) 110 Fed. 731;

In re Irwin (D. C.) 177 Fed. 284. When an omission from a schedule is purposely and fraudulently made, the verification of such a false schedule constitutes a criminal offense in itself. Section 29b, cl. 2, provides the offense of making "a false oath or account in, or in relation to, any proceeding in bankruptcy." In re Eaton (D. C.) 110 Fed. 731; In re Royal (D. C.) 112 Fed. 135. As the false oath to a schedule from which property is fraudulently omitted is a criminal offense described by clause 2 of section 29b of the Bankruptcy Act, and as the criminal offense of concealing property from a trustee is prescribed by clause 1 of the same sub-section, we are of opinion that the two offenses separately described do not constitute the same substantive crime. As the two subjects in their nature are susceptible of clear distinction, their treatment in separate clauses of the statute would indicate that they are not the same. While omission of property from a schedule may be evidence of a fraudulent intent to conceal, we do not think that such omission in itself constitutes concealment of property.

[3] As we are of opinion that the defendant's failure to reveal his property by his schedule does not alone constitute the crime of concealing property from a trustee, and as the testimony nowhere discloses that any of the goods charged to have been concealed were ever in the District of New Jersey, we are irresistibly driven to the conclusion that the government did not prove the material averment of the indictment that the property of the bankrupt defendant was concealed by him from his trustee in the District of New Jersey. We therefore find that the defendant was deprived of his constitutional right to a trial by a jury of the district wherein the crime was committed, and that the judgment against him should be reversed.

While Birnbaum pleaded guilty, and Gretsch, upon trial, was found guilty, of the crime charged, the constitutional right of each was alike invaded by indictment in a district in which the crime was not committed. Although the judgment entered upon Birnbaum's plea of guilty is not before us, we venture to suggest to the District Court that a suspension of Birnbaum's sentence and a disposition of the indictment against him, in harmony with the views expressed in this opinion, would tend to uniformity in the administration of justice.

The judgment is reversed.

BUFFINGTON, Circuit Judge (dissenting). I am constrained to record a dissent in this case.

Gretsch, the plaintiff in error, was a resident of New York state and a lawyer of many years practice. When he and his partner, Birnpaum, went into bankruptcy, Gretsch advised their petition be filed in New Jersey. The two men met in New Jersey, prepared their schedules, signed them there and filed their voluntary petition in the District Court of the District of New Jersey. In their schedules, no return was made of some twenty-odd thousand dollars worth of jewelry which both men, when subsequently indicted, conceded had disappeared.

Schedule B, prescribed by the Supreme Court in pursuance of statutory power, requires a "statement of *all* property of a bankrupt," and

subdivision (2) requires a listing of amount and location of stock in trade. It contemplates, not only a listing of all the goods, but a disclosure of where they can be found. For example, item B (1) provides for a return of "machinery, fixtures, apparatus and tools used in business, *with the place where each is situated, viz.,*" and item B (2) for "goods or personal property of any other description, *with the place where each is situated, viz.*"

That the schedules contemplated a listing of all the bankrupts' property, no matter where situate, is shown by the provision that *"all* real and personal property belonging to the bankrupt shall be appraised," etc. The act further provides that the trustee is vested by operation of law with the title of the bankrupt "to *all* * * * property, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Moreover, as the court is granted jurisdiction to "cause the estates of bankrupts to be collected, reduced to money and distributed," and to that end it is empowered to "enforce obedience by bankrupts * * * to all lawful orders, by fine or imprisonment," etc., and further to "arraign, try, and punish bankrupts * * * for violation of this act, in accordance with the laws of procedure of the United States, now in force, or such as may be hereafter enacted, regulating trials for the alleged violation of laws of the United States," it follows that the New Jersey District Court could, had it known the facts, have compelled these bankrupts by attachment and imprisonment to have delivered to the trustee their undisclosed property, no matter where it was located. Their violation of law lay in the fact that their property was concealed, not in the method or means by which such concealment was effected. It is manifest therefore that by making a false disclosure, an affirmative act, and by failing, a negative omission, to return all their property in their schedules, Gretsch and Birnbaum laid the ground for charging them with the statutory crime of having "concealed while a bankrupt, or after his discharge, from his trustee *any* of the property belonging to his estate in bankruptcy." But it is contended that inasmuch as no part of their personal property was ever in New Jersey no crime was committed in New Jersey, and therefore the conviction of Gretsch in this case must be reversed because he was denied his constitutional right:

That "the trial of all crimes, except in cases of impeachment, shall be by jury, and that such trial shall be held in the state where the said crimes shall have been committed."

In view of the fact that Gretsch was himself a lawyer, that he was defended by competent counsel, that he pleaded to the indictment and chanced an acquittal without mooting this question in the court below, we are not impressed with his later contention that he was really denied any privilege which he prized as a constitutional shield. But, treating the question as a timely assertion of constitutional right, it has seemed to us that the concealment, which it is conceded was made, was criminally made in New Jersey. In determining that fact due regard must be given to the acts of Gretsch himself, done in New Jer-

sey. That the crime of concealment was committed somewhere is clear. The question is: Where did Gretsch commit it? Certainly not before filing the petition in bankruptcy. Assuming he had spirited his goods out of sight in New York with a view to going into bankruptcy, it is clear that such overt acts would not of themselves, and prior to bankruptcy, have constituted the statutory crime of bankruptcy concealment. When did the intent to conceal rise to the level of crime? A crime has been defined in Bouvier's Law Dictionary as:

"An act committed or omitted in violation of a public law either forbidding or commanding it."

When Gretsch therefore went to New Jersey and filed the petition in bankruptcy, and then and there made and placed on record attested statements which concealed the vital fact that he then had in his possession $20,000 worth of property which under the law he should have described, located, and surrendered to the trustee, his prior' criminal thought became a criminal deed, because he then and there violated the bankrupt law in not disclosing and scheduling his property. Assuredly failure to disclose what one by law should disclose is concealment.

Concealment is a continuing, persistent act, not an isolated, completed one, for, as said by the Supreme Court in Re Snow, 120 U. S. 286, 7 Sup. Ct. 562, 30 L. Ed. 658:

"A distinction is laid down in adjudged cases and in text-writers between an offense continuous in its character, like the one at bar, and a case where the statute is aimed at an offense that can be committed uno ictu."

Unless concealment lasts, it ceases to be concealment. If Gretsch had hidden his diamonds in New York, and then gone to New Jersey and disclosed their location in the bankruptcy proceedings, however guilty the prior act in New York was in purpose, the subsequent act of terminating the concealment by a disclosure in the New Jersey proceeding left no foundation on which to base the statutory crime. On the other hand, having concealed the goods in New York, and gone to New Jersey and there carried out a guilty purpose by there preparing and filing papers invoking the benefit of a law whose discharge was based on the disclosure and surrender of all his property, does not the conclusion inevitably follow that the guilty purpose, formed in New York, merged into a criminal act in New Jersey, and thus bring the case within the provisions of R. S. § 731, of which the Supreme Court in Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392, said:

"The petitioner relies on those provisions of the Constitution of the United States which declare that in all criminal prosecutions the accused shall have the right to be tried by an impartial jury of the state and district wherein the crime shall have been committed. Article 3, § 2; Amendments, art. 6. But the right thereby secured is not a right to be tried in the district where the accused resides, or *even in the district in which he is personally at the time of committing the crime,* but in the district 'wherein the crime shall have been committed.' * * * When a crime is committed partly in one district and partly in another, it must, in order to prevent an absolute failure of justice, be tried in either district, or in that one which the Legislature may designate; and Congress has accordingly provided that, 'when any offense against

the United States is begun in one judicial district and completed in any other, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein.' Rev. Stat. § 731."

Gretsch's acts or omissions, subsequent to the bankruptcy, in continuing to secrete the goods do not constitute new additional crimes for which he could be indicted. They are merely evidential of the prior crime of concealment. They can all be given in evidence, not as proof of new crimes, but to show the single, statutory concealment which the bankrupt law makes a crime. The location of the goods, the means or method of concealment, are evidential and incidental; the fact of concealment is the all-important and controlling thing. The bankrupt law does not make a separate crime out of every concealment. If it did, a bankrupt could be indicted for every article he had concealed in different places, in different ways, and at different times. He could be indicted for perjury, also, as many different times as there are different articles or lots of articles to which his one false oath applied. If he filed a petition in one district, and had property in half a dozen other states which he was concealing, surely he could not be convicted in each of these several states for each of these several concealments. Yet it seems to logically follow that if Gretsch cannot be prosecuted for concealment in New Jersey, because his goods were in New York, it must be held he could be prosecuted in New York; and if such be the law it logically follows that a bankrupt could be prosecuted in every one of several other states where he had goods concealed. But as said by Lord Mansfield in Crepps v. Durden, Cowper, 640:

"Repeated offenses are not the object which the Legislature had in view in making the statute, but simply to punish a man for exercising his ordinary trade and calling on a Sunday."

We think the impracticable results of such a holding give support to the view that concealment is a single crime, and not a series of crimes; that when a bankrupt has elected in what district to have his estate administered, and then seeks to defeat the due administration of his estate in that district, by a concealment of his goods, that the law will regard the jurisdiction in which he chose to make concealment practically effective as the place where the crime of concealment localized, and that the bankrupt is denied no constitutional shield in so holding. For it will be apparent that cases can arise in these fraudulent concealment cases where, unless by a false return in his schedules, a dishonest bankrupt localizes the crime of concealment, he never will, nor indeed can, localize it elsewhere. If Gretsch's firm, for example, had held accounts for diamonds sold in New York, and they did not disclose those accounts in their schedules filed in the New Jersey district, if their failure to disclose such account in New Jersey was not a concealment, no conviction could ever be had, for the concealment would not localize elsewhere.

Historically the constitutional provision was to stop the practice in vogue before our independence of carrying men from their own neighborhood and trying them for crimes in places where they had

never committed crimes, and where they were not known. In this case, on the contrary, the evidence is that Gretsch advised the bankruptcy be brought in New Jersey because "nobody knows me over there." To invoke this great constitutional shield on behalf of an experienced lawyer, who deliberately chose a neighboring state as a place to procure a fraudulent discharge, and who did not invoke such shield when he was tried by calling it to the trial court's attention, is wellnigh an answer to his contention. While we find no case in which the express question here involved was raised and decided, reference shows that the views expressed above are in harmony with adjudged cases. In Kern v. United States, 169 Fed. 617, 95 C. C. A. 145, the Circuit Court of Appeals of the Sixth Circuit sustained a conviction both for fraudulent concealment and also for making a false oath in a bankruptcy proceeding, where the facts were substantially like the present case. It was there said:

"Moreover, his schedule being indefinite, it would point to no more assets that in aid of it he should actually discover to the trustee, or, at least, to only so much as the trustee would be likely to discover. And, if he had formed the purpose to conceal the other assets from the trustee, his verification of the schedule was a falsehood. The very purpose of it was to show what his assets were and the whole of them. * * * Soon after the commencement of the bankruptcy proceedings the bankrupt fled to Canada, picking up, as there was evidence tending to show, some of his undisclosed assets in other states on his way, and from Canada endeavored to gather in more. * * * After he returned from Canada, the bankrupt by leave of the court filed an amended schedule of assets, which included those he is charged with having concealed; and counsel argues that this related back to his original schedule, and operated as an atonement, which, being made while the proceedings were yet in progress, redeemed his fault, so that in the end nothing was concealed from the trustee. But we are unable to agree that it would have such an effect. The offenses of false swearing and concealment, *when once committed*, could not be retrieved by right and lawful conduct and the doing of things 'meet for repentence,' however they might affect the judgment of the court in imposing sentence."

From this it will be seen that the court in effect held that concealment occurred when the schedules were filed, and this was in accord with Seigel v. Cartel, 164 Fed. 691, 90 C. C. A. 512, where, on a petition for discharge, it was said:

"Not having scheduled or surrendered the property to the trustee, the concealment of the proceeds, within the provisions of the statute, is presumed."

The question of jurisdiction was discussed in the late case of Lamar v. United States, 240 U. S. 60, 36 Sup. Ct. 255, 60 L. Ed. ——, where the court said:

"It reasonably may be inferred from the evidence that the defendant was tried in the right state and district in fact. * * * The personation was by telephone to a person in New York (Southern District), and it might be found that the speaker also was in the Southern District; *but, if not, at all events the personation took effect there*. Burton v. United States, 202 U. S. 334, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392. These objections are frivolous, and the others have been shown to be unfounded."

Admittedly the crime of concealment was committed somewhere, and reason, analogy, and the practical administration of the bankrupt law point to the New Jersey court, where the concealment was made effective, as the place where it should be tried.