## RACHMIL v. UNITED STATES.
### No. 6039.

Circuit Court of Appeals, Ninth Circuit.
Oct. 6, 1930.

Sam L. Levinson, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Jeffrey Heiman and Cameron Sherwood, Asst. U. S. Attys., all of Seattle, Wash.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

The following opinion, prepared by DIETRICH, Circuit Judge, is adopted as the opinion of the court by WILBUR, Circuit Judge, and WEBSTER, District Judge:

PER CURIAM.

In the United States District Court for the District of Washington, Northern Division, appellant was adjudged guilty upon an indictment charging an offense under section 29b of the Bankruptcy Act as amended (11 USCA § 52(b). In substance, the indictment sets forth that on February 21, 1929, he was a dealer in furniture in the city of Seattle, under the name of Bell Town Furniture Company; that on that day an involuntary petition in bankruptcy was filed against him in the United States District Court for that district; that pursuant to the prayer of the petition he was, on March 25, 1929, duly adjudged a bankrupt, and that thereafter, on May 1, 1929, one J. L. McLean was appointed, and two days later he qualified, as trustee in bankruptcy; that beginning on January 25, 1929, and continuously henceforth up to the filing of the indictment, within the district and division aforesaid, appellant knowingly, willfully, and fraudulently concealed from said trustee in bankruptcy personal property belonging to the estate in bankruptcy, consisting of money and merchandise approximating the value of $10,000, the nature and description of which were to the grand jurors unknown. The pertinent part of the statute upon which the charge is predicated provides that: "A person shall be punished * * * upon conviction of the offense of having knowingly and fraudulently (1) concealed from the * * * trustee * * * any property belonging to the estate of a bankrupt." (11 USCA § 52b, 1930 Cumulative Part, page 32, 44 Stat. 665).

Manifestly, the indictment is highly artificial, if not false, upon its face. How appellant could conceal property "belonging to his estate in bankruptcy" "while a bankrupt" before he became a "bankrupt" or had any "estate in bankruptcy," or how he could conceal it from "his trustee" months before there was any such trustee, we are unable to comprehend. The power of Congress to declare the fraudulent concealment by a debtor of his property prior to the institution of bankruptcy proceedings, unless possibly in case he contemplated such proceedings, may be doubted, but that question we need not decide, for the act evinces no such intention. The statutory language above quoted clearly indicates that the term bankrupt is used in a technical sense. To constitute the offense, the concealment must be of "property belonging," not to the debtor, but to his "estate in bankruptcy," and must be made by him "while a bankrupt" or "after his discharge." If the broad construction for which the government contends was contemplated, the latter clause "or after his discharge" would be superfluous, for surely in a popular sense one is to say the least, as much a "bankrupt" after his discharge and while the administration of his estate is pending as he was before any proceeding in bankruptcy was instituted, and how can a person conceal "property belonging to his estate in bankruptcy" when he has not and never has had an "estate in bankruptcy." The pertinency of these comments will appear when the facts are disclosed.

On February 4, 1929, seventeen days prior to the institution of the involuntary proceeding, appellant went from Seattle to Vancouver, B. C., and from there to divers cities in Canada, but at no time thereafter was he in the United States until July of that year, when he was returned upon extradition proceedings. Constructive service only was made in the bankruptcy proceeding, and at no time prior to the return of the indictment was he served with any notice or did he make any appearance or take any steps therein. It is not even shown that he had any knowledge thereof, and indeed the court below held that "it was not necessary that he should actually know a trustee had been appointed for his estate in bankruptcy or that proceedings had been begun"; and, in substance, so advised the jury. The property referred to in the indictment consisted of money realized from the sales of personal assets before he departed and carried by him on his person into Canada. There was testimony given by numerous witnesses who knew him and had had business dealings with him, some of whom were creditors of his estate, that prior to his

departure for Canada he had always borne a good reputation for honesty and fair dealing. He testified that he did not go to Canada to defraud or defeat his creditors. But considering the possible inferences to be drawn from the circumstances, it may be said that upon that point the evidence as a whole is conflicting. He further testified that while in Canada, in the latter part of May, he was violently assaulted and robbed of the money he had taken with him from the United States, and some testimony given by Canadian officers and certain circumstances in evidence tended to corroborate his contention in that respect.

█ Under the plain import of the statute, as we think, "concealment," however flagrant in respect of creditors, prior to the institution of bankruptcy proceedings and the appointment of a trustee, cannot constitute the offense charged; and knowingly and fraudulently to conceal property from the trustee necessarily implies some knowledge on the part of the bankrupt of the existence of a trustee. Prior concealment may have some evidentiary bearing upon the question of concealment from the trustee, after his appointment, but after all that is the essential and the only ultimate question. In certain cases cited by the government, United States v. Goldstein (D. C.) 132 F. 789; Glass v. United States (C. C. A.) 231 F. 65, and Kalin v. United States (C. C. A.) 2 F. (2d) 58, expressions may be found from which possibly a different view may be inferred, but it can hardly be said that in any one of them is there an unequivocal ruling upon the precise question. Greenspahn v. United States (C. C. A.) 298 F. 736, and the cases therein referred to are not in point. They involve charges of conspiracy to commit the offense herein considered and, under the familiar rule that for a conspiracy one may be prosecuted immediately upon the performance of a single act done in furtherance of its object, it may be that those who prior to but in contemplation of bankruptcy proceedings plan and conspire together to conceal property, which will constitute a part of the bankrupt's estate, from the trustee after his appointment, and perform some preliminary act in furtherance of the plan, at once become subject to prosecution for the conspiracy. The distinction is made clear by a comparison of the decision in Marcus v. United States (C. C. A.) 20 F.(2d) 454, 455, with that by the same court in Steigman v. United States, 220 F. 63, one of the cases cited, and supporting the conclusion reached, in the Greenspahn Case. In the Marcus Case the court said: "When is the offense (section 29b) committed? We have answered that question on given facts in Glass v. United States, 231 F. 65. Paraphrasing the section, the offense has three elements—(1) concealment by a person 'while a bankrupt' (2) 'from his trustee' of (3) 'property belonging to the bankrupt estate.' Until the offender shall have become a bankrupt, he cannot, as such, commit the offense; and until his trustee shall have been elected—that is, until he shall come into existence—it is quite impossible to conceal property from him. Therefore, the offense is not committed in the sense of being completed until its three elements shall have been established. But the offense may be commenced before any one of them come into existence. In anticipation of bankruptcy and of the election of a trustee, a person may conceal his property; and after bankruptcy, that is, after the creation of a bankrupt estate and the election of a trustee, concealment thus begun may be continued. If the facts show continued concealment, that is the offense denounced by the statute and that is the time of its commission. In the instant case the concealment began between January 1 and August 9, 1924. During a part of that time there was no bankrupt estate and during the whole of it there was no trustee, and, in consequence, there could not be the statutory offense of concealment."

In Gretsch v. United States (C. C. A.) 231 F. 57, 62, involving primarily a question of jurisdiction similar to that arising under another aspect of the instant case, a like view is necessarily implied in the majority opinion, and even in the dissenting opinion, which the government here contends is the more logical, Judge Buffington says: "That the crime of concealment was committed somewhere is clear. The question is: Where did Gretsch commit it? Certainly not before filing the petition in bankruptcy [in New Jersey]. Assuming he had spirited his goods out of sight in New York with a view to going into bankruptcy, it is clear that such overt acts would not of themselves, and prior to bankruptcy, have constituted the statutory crime of bankruptcy concealment. * * * Unless concealment lasts, it ceases to be concealment. If Gretsch had hidden his diamonds in New York, and then gone to New Jersey and disclosed their location in the bankruptcy proceedings, however guilty the prior act in New York was in purpose, the subsequent act of terminating the concealment by a disclosure in the New Jersey pro-

ceeding left no foundation on which to base the statutory crime."

It is not contended by the government that the trustee here ever made any demand on defendant or notified him of the involuntary bankruptcy proceeding or his appointment as trustee; nor was the evidence sufficient to warrant the jury in finding beyond a reasonable doubt that at any time prior to the return of the indictment or until extradition proceedings were commenced appellant had any knowledge of the existence of a trustee or even that bankruptcy proceedings had been instituted. Indeed, as already noted, the court instructed the jury that such knowledge was not requisite. While we are not to be understood as holding that in all cases it is necessary that the trustee give formal notice or make demand, it is thought that the offense of "knowingly" concealing cannot be committed without some knowledge on the part of the bankrupt of the existence of the bankruptcy proceeding, unless he willfully closes his eyes to that which is obvious. And, hence, upon this ground alone, the judgment must be reversed.

Perhaps we should add that, assuming such knowledge on the part of the defendant, under the view we have taken of the meaning of the statute and upon the facts as disclosed by the record, it is a serious question whether appellant committed any offense in whole or in part in the United States and the jurisdiction of the trial court is, to say the least, subject to grave doubt. See the Gretsch Case, supra. The government relies upon a familiar principle, the most extreme applications of which perhaps may be found in Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Strassheim v. Daily, 221 U. S. 285, 31 S. Ct. 558, 55 L. Ed. 735, and Lamar v. United States, 240 U. S. 60, 36 S. Ct. 255, 60 L. Ed. 526. But, inasmuch as upon another trial, if one should be had, the facts disclosed may be different, we deem it unnecessary to decide and inexpedient to discuss the question.

Reversed.