UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Demore JEWELL,
Defendant-Appellant.

No. 74–2832.

United States Court of Appeals,
Ninth Circuit.

Feb. 27, 1976.

Certiorari Denied July 21, 1976.
See 96 S.Ct. 3173.

Anthony M. Kennedy, Circuit Judge, dissented and filed opinion, in which Ely, Hufstedler and Wallace, Circuit Judges, joined.

Robert W. Ripley, Jr., San Diego, Cal., for defendant-appellant.

William A. Bower, Asst. U. S. Atty., on the brief, James W. Meyers, Asst. U. S. Atty., on the petition for rehearing, Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED and KENNEDY, Circuit Judges.

BROWNING, Circuit Judge:

We took this case in banc to perform a simple but necessary "housekeeping" chore. The opinion in *United States v. Davis*, 501 F.2d 1344 (9th Cir. 1974), refers to possession of a controlled substance, prohibited by 21 U.S.C. § 841(a)(1), as a "general intent" crime. If this means that the mental state required for conviction under section 841(a)(1) is only that the accused intend to do the act the statute prohibits, the characterization is incorrect. The statute is violated only if possession is accompanied both by knowledge of the nature of the act and also by the intent "to manufacture, distribute, or dispense." *United States v. Clark*, 475 F.2d 240, 248–49 (2d Cir. 1973). The jury was so instructed in this case. We are unanimously of the view that this instruction reflects the only possible interpretation of the statute. The contrary language in *Davis* is disapproved.

This does not mean that we disapprove the holding in *Davis*. On the contrary, we are unanimously of the view that the panel in *Davis* properly held that "The government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing." 501 F.2d at 1346. We restrict *Davis* to the principle that a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses. *Cf. United States v. Moser*, 509 F.2d 1089, 1092–93 (7th Cir. 1975).

In the course of in banc consideration of this case, we have encountered another problem that divides us.

Appellant defines "knowingly" in 21 U.S.C. §§ 841 and 960 to require that positive knowledge that a controlled substance is involved be established as an element of each offense. On the basis of this interpretation, appellant argues that it was reversible error to instruct the jury that the defendant could be convicted upon proof beyond a reasonable doubt that if he did not have positive knowledge that a controlled substance was concealed in the automobile he drove over the border, it was solely and entirely because of the conscious purpose on his part to avoid learning the truth. The majority concludes that this contention is wrong in principle, and has no support in authority or in the language or legislative history of the statute.

It is undisputed that appellant entered the United States driving an automobile in which 110 pounds of marihuana worth $6,250 had been concealed in a secret compartment between the trunk and rear seat. Appellant testified that he did not know the marijuana was present. There was circumstantial evidence from which the jury could infer that appellant had positive knowledge of the presence of the marihuana, and that his contrary testimony was

false.[1] On the other hand there was evidence from which the jury could conclude that appellant spoke the truth—that although appellant knew of the presence of the secret compartment and had knowledge of facts indicating that it contained marijuana, he deliberately avoided positive knowledge of the presence of the contraband to avoid responsibility in the event of discovery.[2] If the jury concluded the latter was indeed the situation, and if positive knowledge is required to convict, the jury would have no choice consistent with its oath but to find appellant not guilty even though he deliberately contrived his lack of positive knowledge. Appellant urges this view. The trial court rejected the premise that only positive knowledge would suffice, and properly so.

Appellant tendered an instruction that to return a guilty verdict the jury must find that the defendant knew he was in possession of marihuana. The trial judge rejected the instruction because it suggested that "absolutely, positively, he has to know that it's there." The court said, "I think, in this case, it's not too sound an instruction because we have evidence that if the jury believes it, they'd be justified in finding he actually didn't know what it was—he didn't because he didn't want to find it."

■ The court instructed the jury that "knowingly" meant voluntarily and intentionally and not by accident or mistake.[3]

1. Appellant testified that a week before the incident in question he sold his car for $100 to obtain funds "to have a good time." He then rented a car for about $100, and he and a friend drove the rented car to Mexico. Appellant and his friend were unable to adequately explain their whereabouts during the period of about 11 hours between the time they left Los Angeles and the time they admitted arriving in Mexico.

Their testimony regarding acquisition of the load car follows a pattern common in these cases: they were approached in a Tijuana bar by a stranger who identified himself only by his first name—"Ray." He asked them if they wanted to buy marihuana, and offered to pay them $100 for driving a car north across the border. Appellant accepted the offer and drove the load car back, alone. Appellant's friend drove appellant's rented car back to Los Angeles.

Appellant testified that the stranger instructed him to leave the load car at the address on the car registration slip with the keys in the ashtray. The person living at that address testified that he had sold the car a year earlier and had not seen it since. When the Customs agent asked appellant about the secret compartment in the car, appellant did not deny knowledge of its existence, but stated that it was in the car when he got it.

There were many discrepancies and inconsistencies in the evidence reflecting upon appellant's credibility. Taking the record as a whole, the jury could have concluded that the evidence established an abortive scheme, concocted and carried out by appellant from the beginning, to acquire a load of marihuana in Mexico and return it to Los Angeles for distribution for profit.

2. Both appellant and his companion testified that the stranger identified as "Ray" offered to sell them marihuana and, when they declined, asked if they wanted to drive a car back to Los Angeles for $100. Appellant's companion "wanted no part of driving the vehicle." He testified, "It didn't sound right to me." Appellant accepted the offer. The Drug Enforcement Administration agent testified that appellant stated "he thought there was probably something wrong and something illegal in the vehicle, but that he checked it over. He looked in the glove box and under the front seat and in the trunk, prior to driving it. *He didn't find anything, and, therefore, he assumed that the people at the border wouldn't find anything either*" (emphasis added). Appellant was asked at trial whether he had seen the special compartment when he opened the trunk. He responded, "Well, you know, I saw a void there, but I didn't know what it was." He testified that he did not investigate further. The Customs agent testified that when he opened the trunk and saw the partition he asked appellant "when he had that put in." Appellant told the agent "that it was in the car when he got it."

The jury would have been justified in accepting all of the testimony as true and concluding that although appellant was aware of facts making it virtually certain that the secret compartment concealed marihuana, he deliberately refrained from acquiring positive knowledge of the fact.

3. The court said:

An act is done knowingly if it's done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" was to insure that no one would be convicted for acts done because of an omission or failure to act due to mistake or accident or other innocent reason.

The court told the jury that the government must prove beyond a reasonable doubt that the defendant "knowingly" brought the marihuana into the United States (count 1: 21 U.S.C. § 952(a)), and that he "knowingly" possessed the marihuana (count 2: 21 U.S.C. § 841(a)(1)). The court continued:

The Government can complete their burden of proof by proving, beyond a reasonable doubt, that if the defendant was not actually aware that there was marijuana in the vehicle he was driving when he entered the United States his ignorance in that regard was solely and entirely a result of his having made a conscious purpose to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth.

The legal premise of these instructions is firmly supported by leading commentators here and in England. Professor Rollin M. Perkins writes, "One with a deliberate antisocial purpose in mind . . . may deliberately 'shut his eyes' to avoid knowing what would otherwise be obvious to view. In such cases, so far as criminal law is concerned, the person acts at his peril in this regard, and is treated as having 'knowledge' of the facts as they are ultimately discovered to be." [4] J. Ll. J. Edwards, writing in 1954, introduced a survey of English cases with the statement, "For well-nigh a hundred years, it has been clear from the authorities that a person who deliberately shuts his eyes to an obvious means of knowledge has sufficient *mens rea* for an offence based on such words as . . . 'knowingly.' " [5] Professor Glanville Williams states, on the basis both English and American authorities, "To the requirement of actual knowledge there is one strictly limited exception. . . . [T]he rule is that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." [6] Professor Williams concludes, "The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law." [7]

The substantive justification for the rule is that deliberate ignorance and positive knowledge are equally culpable. The textual justification is that in common understanding one "knows" facts of which he is less than absolutely certain. To act "knowingly," therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question. When such awareness is present, "positive" knowledge is not required.

This is the analysis adopted in the Model Penal Code. Section 2.02(7) states: "When knowledge of the existence of a particular fact is an element of an offense, such

4. R. Perkins, Criminal Law 776 (2d ed. 1969).

5. Edwards, *The Criminal Degrees of Knowledge*, 17 Modern L.Rev. 294, 298 (1954). Later in his discussion Mr. Edwards writes, "[N]o real doubt has been cast on the proposition that connivance is as culpable as actual knowledge. We have already seen the diverse fashions in which this state of mind has been defined, ranging from the original expression 'wilful shutting of the eyes' and its closest counterpart 'wilful blindness,' to the less forceful but equally satisfactory formulae 'purposely abstaining from ascertaining' and 'wilfully abstaining from knowing.' " *Id.* at 302.

6. G. Williams, Criminal Law: The General Part, § 57 at 157 (2d ed. 1961).

7. *Id.* at 159. Mr. Williams' concluding paragraph reads in its entirety:

The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law. It is, at the same time, an unstable rule, because judges are apt to forget its very limited scope. A court can properly find wilful blindness only where it can almost be said that the defendant actually knew. He suspected the fact; he realised its probability; but he refrained from obtaining the final confirmation because he wanted in the event to be able to deny knowledge. This, and this alone, is wilful blindness. It requires in effect a finding that the defendant intended to cheat the administration of justice. Any wider definition would make the doctrine of wilful blindness indistinguishable from the civil doctrine of negligence in not obtaining knowledge.

knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist."[8] As the Comment to this provision explains, "Paragraph (7) deals with the situation British commentators have denominated 'wilful blindness' or 'connivance,' the case of the actor who is aware of the probable existence of a material fact but does not satisfy himself that it does not in fact exist."[9]

The Supreme Court, in *Leary v. United States*, 395 U.S. 6, 46 n.93, 89 S.Ct. 1532, 1553, 23 L.Ed.2d 57, 87 (1969), applied the Model Penal Code definition of knowledge in determining the meaning of "knowing" in former 21 U.S.C. § 176a. In *Turner v. United States*, 396 U.S. 398, 416 & n.29, 90 S.Ct. 642, 652, 24 L.Ed.2d 610, 623 (1970), the Court adopted the Model Penal Code definition in defining "knowingly" in 21 U.S.C. § 174.[10] The *Turner* opinion recognizes that this definition of "knowingly" makes actual knowledge unnecessary: "[T]hose who traffic in heroin will inevitably become aware that the product they deal in is smuggled, *unless they practice a studied ignorance to which they are not entitled.*" 396 U.S. at 417, 90 S.Ct. at 653,

24 L.Ed.2d at 624. (footnotes omitted, emphasis added), *citing Griego v. United States*, 298 F.2d 845, 849 (10th Cir. 1962). *Griego* remanded a section 174 charge for a new trial, stating, "In the circumstances of this case the jury should be instructed on the tendered defense of no knowledge and told that the defense is not available if the jury finds from all the evidence beyond a reasonable doubt that the defendant had a conscious purpose to avoid learning the source of the heroin." 298 F.2d at 849. The Supreme Court again adopted the Model Penal Code definition of knowledge and approved the language of *Griego* in *Barnes v. United States*, 412 U.S. 837, 845 & n.10, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380, 387 (1973).

It is true that neither *Leary, Turner,* nor *Barnes* involved a jury instruction. However, *United States v. Squires*, 440 F.2d 859, 863–64 & n.12 (2d Cir. 1971), and *United States v. Jacobs*, 475 F.2d 270, 287–88 (2d Cir. 1973), recognize that the Supreme Court's approval of the Model Penal Code definition of knowledge implies approval of an instruction that the requirement of knowledge is satisfied by proof of a "conscious purpose to avoid learning the truth."[11] The implication seems inevitable,

---

**8.** Model Penal Code 27 (Prop. Official Draft 1962).

**9.** Model Penal Code 129–30 (Tent. Draft No. 4, 1955). Comment 9 reads in full as follows:
Paragraph (7) deals with the situation British commentators have denominated "wilful blindness" or "connivance," the case of the actor who is aware of the probable existence of a material fact but does not satisfy himself that it does not in fact exist. See Edwards, *The Criminal Degrees of Knowledge*, 17 Modern L.Rev. 294 (1954); [G. Williams, Criminal Law: The General Part § 41 (1st ed. 1953)]. Whether such cases should be viewed as instances of acting recklessly or knowingly presents a subtle but important question.
The draft proposes that the case be viewed as one of acting knowingly when what is involved is a matter of existing fact, but not when what is involved is the result of the defendant's conduct, necessarily a matter of the future at the time of acting. The position reflects what we believe to be the normal policy of criminal enactments which rest liability on acting "knowingly," as is so commonly done. The inference of "knowledge" of an existing fact is usually drawn from

proof of notice of substantial probability of its existence, unless the defendant establishes an honest, contrary belief. The draft solidifies this usual result and clarifies the terms in which the issue is submitted to the jury.

**10.** *See also United States v. Freed*, 401 U.S. 601, 613 n.5, 91 S.Ct. 1112, 1120, 28 L.Ed.2d 356, 364 (1971) (Brennan, J., concurring).

**11.** *Jacobs* involved convictions under 18 U.S.C. §§ 2314 and 2315 prohibiting dealings in securities "knowing the same to have been stolen." The charge read:
The third element of the offense is that the defendant knew that the Treasury Bills had been stolen. Knowledge is not something that you can see with the eye or touch with the finger. It is seldom possible to prove it by direct evidence. The government relies largely on circumstantial evidence in this case to establish knowledge.
In deciding whether a particular defendant under consideration by you knew the bills were stolen you should consider all the circumstances such as how the defendant han-

in view of the approval of *Griego* in *Turner* and *Barnes.*

■ "Deliberate ignorance" instructions have been approved in prosecutions under criminal statutes prohibiting "knowing" conduct by the Courts of Appeals of the Second, Sixth, Seventh, and Tenth Circuits.[12] In many other cases, Courts of Appeals reviewing the sufficiency of evidence have approved the premise that "knowingly" in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it.[13] These lines of author-

dled the transaction, how he conducted himself. Do his actions betray guilty knowledge that he was dealing with stolen securities or are his actions those of a duped, innocent man?

Guilty knowledge cannot be established by demonstrating merely negligence or even foolishness on the part of a defendant. *However, it is not necessary that the government prove to a certainty that a defendant knew the bills were stolen. Such knowledge is established if the defendant was aware of a high probability that the bills were stolen, unless the defendant actually believed that the bills were not stolen.*

Knowledge that the goods have been stolen may be inferred from circumstances that would convince a man of ordinary intelligence that this is the fact. *The element of knowledge may be satisfied by proof that a defendant deliberately closed his eyes to what otherwise would have been obvious to him.*

*Thus if you find that a defendant acted with reckless disregard of whether the bills were stolen and with a conscious purpose to avoid learning the truth the requirement of knowledge would be satisfied, unless the defendant actually believed they were not stolen.*

Furthermore, I instruct you that proof of a sale and purchase at a substantially discounted price permits an inference that the parties to the transaction knew of the illicit character of the items sold.

You should scrutinize the entire conduct of the defendant at or near the time the offenses are alleged to have been committed.
475 F.2d at 287 n.37 (emphasis added).

12. *United States v. Dozier,* 522 F.2d 224, 226 (2d Cir. 1975) (21 U.S.C. § 841(a)(1); upheld the following jury instruction: "If you find from all the evidence beyond a reasonable doubt either that the defendant knew that she was helping in a cocaine transaction, or that she had a conscious purpose to avoid finding out the identity of the substance so as to close her eyes to the facts, you could find sufficient evidence to find her guilty beyond a reasonable doubt"); *United States v. Olivares-Vega,* 495 F.2d 827, 830 (2d Cir. 1974) (21 U.S.C. §§ 952(a) & 841(a)(1)); *United States v. Joly,* 493 F.2d 672 (2d Cir. 1974) (21 U.S.C. §§ 841(a)(1), 952(a), 955, 960(a)(1) & (2); *United States v. Thomas,* 484 F.2d 909, 912–13 (6th

Cir. 1973) (18 U.S.C. § 922(a)(6): firearms); *United States v. Jacobs,* 475 F.2d 270, 287–88 (2d Cir. 1973) (conspiracy to violate 18 U.S.C. §§ 2314 & 2315: stolen securities); *United States v. Grizaffi,* 471 F.2d 69, 75 (7th Cir. 1972) (18 U.S.C. §§ 371, 1008, 1341; LaBuy Instruction No. 4.05, 33 F.R.D. 553 (1965), approved); *United States v. Sarantos,* 455 F.2d 877, 880–81 (2d Cir. 1972) (18 U.S.C. §§ 371, 1001, 1546); *United States v. Squires,* 440 F.2d 859, 864 & n.12 (2d Cir. 1971) (18 U.S.C. § 922(a)(6); Model Penal Code followed—jury instruction rejected because it should have included "deliberate ignorance"); *United States v. Llanes,* 374 F.2d 712, 716 (2d Cir. 1967) (conviction under former 21 U.S.C. §§ 173 & 174; instructions properly refused "since they failed to include the element of 'a conscious purpose to avoid learning the source of the heroin' "); *United States v. Joyce,* 499 F.2d 9, 23 (7th Cir. 1974) (18 U.S.C. § 1341; LaBuy Instruction No. 4.05 approved); *Griego v. United States,* 298 F.2d 845, 849 (10th Cir. 1962) (reversal of conviction under former 21 U.S.C. § 174; jury should be given "deliberate ignorance" instruction).

*United States v. Bright,* 517 F.2d 584, 586–88 (2d Cir. 1975), reversed a conviction because the trial court refused to add to a "deliberate ignorance" instruction the qualification "unless he actually believes it did not exist," found in Model Penal Code § 2.02(7). This question was not raised below, or in this court, perhaps because the evidence to support it was lacking. *See* note 2 *supra.* *See also United States v. Dozier,* 522 F.2d 224, 228 (2d Cir. 1975) (on petition for rehearing).

13. *United States v. De Garces,* 518 F.2d 1156, 1160 (2d Cir. 1975) (21 U.S.C. §§ 952(a), 960(a)(1)); *United States v. Frank,* 494 F.2d 145, 152–53 (2d Cir. 1974) (transporting stolen money, 18 U.S.C. §§ 371, 1341–1343, 2314); *United States v. Brawer,* 482 F.2d 117, 126–27 (2d Cir. 1973) (18 U.S.C. §§ 2, 371 & 2314, transporting stolen securities); *United States v. Egenberg,* 441 F.2d 441, 444 (2d Cir. 1971) (false statements, 18 U.S.C. § 1001, 26 U.S.C. § 7206(2)); *United States v. Abrams,* 427 F.2d 86, 91 (2d Cir. 1970) (false statements, 18 U.S.C. §§ 2, 1001); *United States v. Sheiner,* 410 F.2d 337, 340–41 (2d Cir. 1969) (18 U.S.C. § 331 and others); *Verdugo v. United States,* 402 F.2d 599, 604 (9th Cir. 1968) (former 21 U.S.C. § 174; *see United States v. Moser,* 509

ity appear unbroken. Neither the dissent nor the briefs of either party has cited a case holding that such an instruction is error or that such evidence is not sufficient to establish "knowledge." [14]

There is no reason to reach a different result under the statute involved in this case. Doing so would put this court in direct conflict with Courts of Appeals in two other circuits that have approved "deliberate ignorance" instructions in prosecutions under 21 U.S.C. § 841(a), or its predecessor, 21 U.S.C. § 174.[15] Nothing is cited from the legislative history of the Drug Control Act indicating that Congress used the term "knowingly" in a sense at odds with prior authority. Rather, Congress is presumed to have known and adopted the "cluster of ideas" attached to such a familiar term of art. *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288, 300 (1952). Congress was aware of *Leary* and *Turner*,[16] and expressed no dissatisfaction with their definition of the term.

Appellant's narrow interpretation of "knowingly" is inconsistent with the Drug Control Act's general purpose to deal more effectively "with the growing menace of drug abuse in the United States." [17] Holding that this term introduces a requirement of positive knowledge would make deliberate ignorance a defense. It cannot be doubted that those who traffic in drugs would make the most of it. This is evident from the number of appellate decisions reflecting conscious avoidance of positive knowledge of the presence of contraband— in the car driven by the defendant or in which he is a passenger, in the suitcase or package he carries, in the parcel concealed in his clothing. *See* notes 12, 13, and 15.

It is no answer to say that in such cases the fact finder may infer positive knowledge. It is probable that many who performed the transportation function, essential to the drug traffic, can truthfully testify that they have no *positive* knowledge of the load they carry. Under appellant's interpretation of the statute, such persons will be convicted only if the fact finder errs in evaluating the credibility of the witness or deliberately disregards the law.

It begs the question to assert that a "deliberate ignorance" instruction permits the jury to convict without finding that the accused possessed the knowledge required by the statute. Such an assertion assumes that the statute requires positive knowledge. But the question is the meaning of the term "knowingly" in the statute. If it means positive knowledge, then, of course,

F.2d 1089, 1092–93 (7th Cir. 1975) (specific intent in 21 U.S.C. § 841(a)(1)); *United States v. Yasser*, 114 F.2d 558, 560 (3d Cir. 1940) (predecessor of 18 U.S.C. § 152; dicta); *cf. United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 59 (8th Cir. 1973) (dicta that guilty avoidance of knowledge can supplant positive knowledge under 18 U.S.C. § 287); *Rachmil v. United States*, 43 F.2d 878, 881 (9th Cir. 1930) (per curiam) (dicta regarding predecessor to 18 U.S.C. § 152).

14. The cases cited in appellant's briefs hold only that knowledge that the substance possessed is a narcotic or controlled substance was an element of the particular offenses involved. None holds that such knowledge cannot be established by proof that the possessor was aware of facts making it highly probable that the substance was a narcotic or controlled substance and lacked positive knowledge only because he consciously avoided it.

15. *United States v. Dozier*, 522 F.2d 224, 226 (2d Cir. 1975); *United States v. Olivares-Vega*, 495 F.2d 827, 830 (2d Cir. 1974); *United States*

*v. Joly*, 493 F.2d 672 (2d Cir. 1974); *United States v. Llanes*, 374 F.2d 712, 716 (2d Cir. 1967) (under former 21 U.S.C. §§ 173 & 174, instruction properly refused because it did not include "deliberate ignorance"); *Griego v. United States*, 298 F.2d 845, 849 (10th Cir. 1962) (on remand under former 21 U.S.C. § 174, jury should be instructed on "deliberate ignorance"); *see United States v. Moser*, 509 F.2d 1089, 1092–93 (7th Cir. 1975) (under 21 U.S.C. § 841(a)(1) sufficiency of evidence of specific intent to possess and distribute LSD).

16. *See, e. g., Drug Abuse Control Amendments —1970, Hearings before the Subcomm. on Public Health & Welfare of the House Comm. on Interstate & Foreign Commerce*, 91st Cong., 2d Sess., at 697, 705–06 (1970); 116 Cong.Rec. 33661 (1970) (col. 2).

17. *See, e. g.*, H.R.No.91–1444, Sept. 10, 1970, 91st Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News 4566, 4567 (1970).

nothing less will do. But if "knowingly" includes a mental state in which the defendant is aware that the fact in question is highly probable but consciously avoids enlightenment, the statute is satisfied by such proof.[18]

■ It is worth emphasizing that the required state of mind differs from positive knowledge only so far as necessary to encompass a calculated effort to avoid the sanctions of the statute while violating its substance.[19] "A court can properly find wilful blindness only where it can almost be said that the defendant actually knew."[20]

18. The argument that a "deliberate ignorance" instruction relieves the jury of finding knowledge was rejected in *United States v. Olivares-Vega*, 495 F.2d 827, 830 (2d Cir. 1974).

19. As Judge Feinberg said in *United States v. Sarantos*, 455 F.2d 877, 881 (2d Cir. 1972), the purpose of the "deliberate ignorance" instruction is "to prevent an individual , . . from circumventing criminal sanctions merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct."

20. G. Williams, *supra* note 6, at 159.

21. We do not suggest that the instruction given in this case was a model in all respects. The jury should have been instructed more directly (1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist.

The deficiency in the instruction does not require reversal, however. Appellant did not object to the instruction on this ground either below or in this court. Since both of the elements referred to are implied in the instruction, the deficiency in the instructions is not so substantial as to justify reversal for plain error. *See United States v. Dozier*, 522 F.2d 224, 228 (2d Cir. 1975) (on petition for rehearing).

Appellant did not argue below or in this court that the instruction did not require an awareness of a high probability that the controlled substance was present. An objection on this ground would have little merit. The instruction given (that "[appellant's] ignorance in that regard was solely and entirely the result of his having made a conscious purpose to disregard the nature of that which was in the vehicle") suggests that the accused must be aware of facts making the presence of the contraband all but certain. Only if the accused were aware of such facts could his ignorance of the presence of the marihuana be "*solely* and *entirely*" the result of his conscious purpose to

In the language of the instruction in this case, the government must prove, "beyond a reasonable doubt, that if the defendant was not actually aware . . . his ignorance in that regard was *solely* and *entirely* a result of . . . a conscious purpose to avoid learning the truth."[21]

No legitimate interest of an accused is prejudiced by such a standard, and society's interest in a system of criminal law that is enforceable and that imposes sanctions upon all who are equally culpable requires it.

The conviction is affirmed.

avoid the truth. Under this instruction, neither reckless disregard nor suspicion followed by failure to make full inquiry would be enough.

Nor did appellant suggest in the court below or in this court that the instruction given was deficient because it failed to state specifically (as we think would have been preferable) that appellant could not be convicted if he actually believed there was no controlled substance in the car. The reason appellant does not raise this objection may be, again, that the instruction given includes the limitation by reasonable inference. If appellant were ignorant of the presence of contraband solely and entirely because he "made a conscious purpose to disregard the nature of that which was in the vehicle," as the instruction given requires, it would hardly be a realistic possibility that he might at the same time have entertained a good faith belief that there was no contraband present. Nor did the instruction permit the jury to convict on an "objective" rather than "subjective" theory of the knowledge requirement; that is, on the theory that appellant was chargeable with knowledge because a reasonable man would have inspected the car more thoroughly and discovered the contraband inside. *See United States v. Bright*, 517 F.2d 584, 587–88 (2d Cir. 1975). The negligence theory was advanced by the government but was rejected by the trial court. The instruction given by the trial court required the jury to find that appellant had a deliberate purpose to avoid the truth. Moreover, the jury was expressly informed that an act was *not* done "knowingly" within the meaning of the statute if it was done by "mistake or accident or other innocent purpose."

In the circumstances of this case, it was not plain error requiring reversal for the instruction to fail to define knowledge explicitly in terms of an awareness of a high probability of the presence of the contraband and the absence of a belief that the contraband was not present.

ANTHONY M. KENNEDY, Circuit Judge, with whom ELY, HUFSTEDLER and WALLACE, Circuit Judges, join (dissenting).

Jewell was convicted and received concurrent sentences on two counts: (1) knowingly or intentionally importing a controlled substance, 21 U.S.C. §§ 952(a), 960(a)(1); (2) knowingly or intentionally possessing, with intent to distribute, a controlled substance, *id.* § 841(a)(1). We agree with the majority that the jury was not required to find, as to count one, that the defendant knew *which* controlled substance he possessed. We further agree that the additional state of mind required by count two—intent to distribute the substance—must be specifically proven as an element of a section 841(a)(1) violation.

The sole question raised by appellant is whether the following jury instruction constitutes reversible error:

> The Government has the burden of proving beyond a reasonable doubt, as to Count 2:
>
> 1. That the defendant knowingly brought the marijuana into the United States and with respect to Count 2 that he knowingly possessed the marijuana as charged.
>
> The Government can complete their burden of proof by proving, beyond a reasonable doubt, that if the defendant was not actually aware that there was marijuana in the vehicle he was driving when he entered the United States his ignorance in that regard was solely and

entirely a result of his having made a conscious purpose to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth.

At the outset, it is arguable that the "conscious purpose to avoid learning the truth" instruction is inherently inconsistent with the additional mens rea required for count two—intent to distribute. It is difficult to explain that a defendant can specifically intend to distribute a substance unless he knows that he possesses it.[1] In any event, we would not approve the conscious purpose instruction in this case, because it falls short of the scienter independently required under both counts.[2]

The majority opinion justifies the conscious purpose jury instruction as an application of the wilful blindness doctrine recognized primarily by English authorities. A classic illustration of this doctrine is the connivance of an innkeeper who deliberately arranges not to go into his back room and thus avoids visual confirmation of the gambling he believes is taking place.[3] The doctrine is commonly said to apply in deciding whether one who acquires property under suspicious circumstances should be charged with knowledge that it was stolen.[4]

One problem with the wilful blindness doctrine is its bias towards visual means of acquiring knowledge. We may know facts from direct impressions of the other senses or by deduction from circumstantial evidence, and such knowledge is nonetheless "actual." Moreover, visual sense impres-

---

1. "Want of knowledge . . . may disprove the existence of a specific intent. Thus one cannot intend to steal property which he believes to be his own however careless he may have been in coming to that belief." R. Perkins, Criminal Law 778 (2d ed. 1969) (footnote omitted).

2. The challenged instruction was given for count two only, but it would seem to be applicable as well to the state of mind required for count one. A jury would be easily confused by the apparent difference in standards, at least absent explicit instructions on the point. Therefore we think it would be inappropriate to invoke the concurrent sentence rule to affirm Jewell's conviction on the basis of count one.

3. *See, e. g., Bosley v. Davies*, [1875] L.R. 1 Q.B. 84.

4. *See* 2 R. Anderson, Wharton's Criminal Law and Procedure § 568 (1957 & Supp.1975). This situation—use of circumstantial evidence to prove a contemporaneous state of mind—should be distinguished from the use of one fact to support the inference of a previous event. *See McAbee v. United States*, 434 F.2d 361, 362–63 (9th Cir. 1970) (permissive inference that possessor of property recently stolen in another state was the thief and had transported it in interstate commerce).

sions do not consistently provide complete certainty.[5]

Another problem is that the English authorities seem to consider wilful blindness a state of mind distinct from, but equally culpable as, "actual" knowledge.[6] When a statute specifically requires knowledge as an element of a crime, however, the substitution of some other state of mind cannot be justified even if the court deems that both are equally blameworthy.[7]

Finally, the wilful blindness doctrine is uncertain in scope. There is disagreement as to whether reckless disregard for the existence of a fact constitutes wilful blindness or some lesser degree of culpability.[8]

Some cases have held that a statute's scienter requirement is satisfied by the constructive knowledge imputed to one who simply fails to discharge a duty to inform himself.[9] There is also the question of whether to use an "objective" test based on the reasonable man, or to consider the defendant's subjective belief as dispositive.[10]

The approach adopted in section 2.02(7) of the Model Penal Code clarifies, and, in important ways restricts,[11] the English doctrine:

> When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of

---

**5.** *See United States v. Wade*, 388 U.S. 218, 228–29, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1158 (1967).

**6.** *See* G. Williams, Criminal Law: The General Part § 57, at 157 (2d ed. 1961) ("To the requirement of actual knowledge there is one strictly limited exception."); Edwards, *The Criminal Degrees of Knowledge*, 17 Modern L.Rev. 294, 302 (1954) (wilful blindness is "as culpable as actual knowledge).

The use of the term "actual knowledge" in this manner is misleading in suggesting the possibility of achieving a state of total certainty, and that only such knowledge is "actual." In fact, we commonly act on less than complete information and in this world may never know one-hundred-percent certainty.

'Absolute knowledge can be had of very few things,' said the Massachusetts court, and the philosopher might add 'if any.' For most practical purposes 'knowledge' 'is not confined to what we have personally observed or to what we have evolved by our own cognitive faculties.'

R. Perkins, *supra* note 1, at 775, *quoting Story v. Buffam*, 90 Mass. 35, 38 (8 Allen) (1864), *and State v. Ransberger*, 106 Mo. 135, 140, 17 S.W. 290, 292 (1891).

**7.** This case does not present the question of how far Congress could reduce the requirement of a mens rea for possession of drugs. The statutes use the terms "knowingly or intentionally." It is true that a strict interpretation of the scienter requirement may produce fewer convictions in combating "the growing menace of drug abuse." But the Supreme Court has cautioned that "the purpose of every statute would be 'obstructed' by requiring a finding of intent, if we assume that it had a purpose to convict without it." *Morissette v. United States*, 342 U.S. 246, 259, 72 S.Ct. 240, 247, 96 L.Ed. 288, 298 (1952). Here it is clear that

Congress intended to require knowledge as an element of these offenses.

The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.

*Id.* at 263, 72 S.Ct. at 249, 96 L.Ed. at 300.

**8.** *Compare* G. Williams, *supra* note 6, at 158–59, *with* Edwards, *supra* note 6, at 303–06. A "reckless disregard" instruction was approved in one case relied upon by the majority. *See United States v. Thomas*, 484 F.2d 909, 912–13 (6th Cir. 1973), *cert. denied*, 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974).

**9.** *E. g., Spurr v. United States*, 174 U.S. 728, 735, 19 S.Ct. 812, 815, 43 L.Ed. 1150, 1153 (1899). These cases generally involve regulatory statutes, the violation of which is malum prohibitum. *Riss & Co. v. United States*, 262 F.2d 245, 248–51 (8th Cir. 1958). Yet one case relied upon by the majority regarded *Spurr* as "comparable" to the former narcotics importation statute. *See Griego v. United States*, 298 F.2d 845, 849 (10th Cir. 1962).

**10.** *See* R. Perkins, *supra* note 1, at 778 & n.77; R. Anderson, *supra* note 4, at 281–82 & nn.6–8.

**11.** Professor Perkins observes that section 2.02(7) of the Model Penal Code "covers must less than 'knowledge' as it has been interpreted as a mens-rea requirement in the common law." With regard to the receipt of stolen property, he criticizes the Code for not imposing liability in "the case of the man who has no belief one way or the other, but has been put on notice that it may be stolen and 'shuts his eyes' in order not to find out." R. Perkins, *supra* note 1, at 799.

its existence, unless he actually believes that it does not exist.

This provision requires an awareness of a high probability that a fact exists, not merely a reckless disregard, or a suspicion followed by a failure to make further inquiry. It also establishes knowledge as a matter of subjective belief, an important safeguard against diluting the guilty state of mind required for conviction. It is important to note that section 2.02(7) is a *definition* of knowledge, not a substitute for it; as such, it has been cited with approval by the Supreme Court. *Turner v. United States*, 396 U.S. 398, 416 & n.29, 90 S.Ct. 642, 652, 24 L.Ed.2d 610, 623 (1970); *Leary v. United States*, 395 U.S. 6, 46 n.93, 89 S.Ct. 1532, 1553, 23 L.Ed.2d 57, 87 (1969).

In light of the Model Penal Code's definition, the "conscious purpose" jury instruction is defective in three respects. First, it fails to mention the requirement that Jewell have been aware of a high probability that a controlled substance was in the car. It is not culpable to form "a conscious purpose to avoid learning the truth" unless one is aware of facts indicating a high probability of that truth. To illustrate, a child given a gift-wrapped package by his mother while on vacation in Mexico may form a conscious purpose to take it home without learning what is inside; yet his state of mind is totally innocent unless he is aware of a high probability that the package contains a controlled substance. Thus, a conscious purpose instruction is only proper when coupled with a requirement that one be aware of a high probability of the truth.

The second defect in the instruction as given is that it did not alert the jury that Jewell could not be convicted if he "actually believed" there was no controlled substance in the car. The failure to emphasize, as does the Model Penal Code, that subjective belief is the determinative factor, may allow a jury to convict on an objective theory of knowledge—that a reasonable man should have inspected the car and would have discovered what was hidden inside. One recent decision reversed a jury instruction for this very deficiency—failure to balance a conscious purpose instruction with a warning that the defendant could not be convicted if he actually believed to the contrary. *United States v. Bright*, 517 F.2d 584, 586–89 (2d Cir. 1975).

Third, the jury instruction clearly states that Jewell could have been convicted even if found ignorant or "not actually aware" that the car contained a controlled substance. This is unacceptable because true ignorance, no matter how unreasonable, cannot provide a basis for criminal liability when the statute requires knowledge.[12] A proper jury instruction based on the Model Penal Code would be presented as a way of defining knowledge, and not as an alternative to it.

The majority opinion cites three cases, all in the Second Circuit, which approve conscious purpose instructions in prosecutions under the same statute as Jewell was charged. In two of these cases the jury instruction included one of the elements of the Model Penal Code provision which was omitted in the instant case.[13] Of course, jury instructions should be considered in context and not subjected to unduly technical analysis. Yet we remain convinced that the instructions given in this case were erroneous; they could have permitted the jury to convict Jewell without being certain beyond a reasonable doubt that he possessed the mens rea required for knowing possession or importation under 21 U.S.C. §§ 841(a) & 960(a).

We do not agree with the majority that we can only reverse if the conscious purpose instruction constituted "plain error." Before the instruction was given, the defense

12. See note 7 *supra.*

13. See *United States v. Olivares-Vega*, 495 F.2d 827, 830 nn.10 & 11 (2d Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 293 (1974) (instruction required acquittal if defendant believed he did not possess controlled substance);

*United States v. Joly*, 493 F.2d 672, 674 (2d Cir. 1974) (conscious purpose to avoid enlightenment when he "had every reason to believe" he possessed a controlled substance). The third case cited by the majority is discussed in note 14 *infra.*

counsel objected "strenuously" on the basis that the jury could convict Jewell for failure to make an adequate attempt to check out the car. When the trial judge rejected this argument, the defense counsel further requested that he "add an addendum" to the charge so the jury would understand it properly. The trial court rejected this suggestion as well, and cut off further argument, saying "The record may show your objection."

Although the defense counsel did not fully anticipate our analysis of the conscious purpose instruction, he came close. (1) He gave a reason for his objection—that the instruction would allow conviction without proof of the scienter element. (2) He further suggested adding "an addendum" to warn the jury against misinterpreting the instruction. We believe these objections were sufficient to require reversal on appeal unless the deficiencies in the instruction were harmless error.[14]

We do not question the sufficiency of the evidence in this case to support conviction by a properly-instructed jury.[15] As with all states of mind, knowledge must normally be proven by circumstantial evidence. There is evidence which could support a conclusion that Jewell was aware of a high probability that the car contained a controlled substance and that he had no belief to the contrary. However, we cannot say that the evidence was so overwhelming that the erroneous jury instruction was harmless. Accordingly, we would reverse the judgment on this appeal.

---

**14.** Thus the instant case is distinguishable from *United States v. Dozier,* 522 F.2d 224 (2d Cir. 1975). There counsel made no objection to the jury charge, and the Second Circuit held the conscious purpose instruction was not so unbalanced as to constitute plain error. *Id.* at 228.

**15.** Thus we have no disagreement with the sufficiency-of-evidence cases cited in note 13 of the majority opinion. However, they are not in point for the instant appeal.