SHIVERS, Judge.
Wetzler appeals his conviction and sentence for possession of more than 20 grams of cannabis. Appellant contends that the evidence was insufficient to support this conviction. We affirm.
On the morning of March 23,1983, appellant drove his pickup truck, which was towing a padlocked U-Haul trailer, into the agricultural inspection station off 1-10 in Suwannee County. Agricultural Inspector Silas told appellant that he would like to look in the trailer. Appellant told Silas that he did not have the key to the padlock. Silas told appellant that he had a pair of bolt cutters for that purpose and requested appellant to cut the lock with them. Appellant voluntarily cut the padlock, and Silas opened the trailer, observing what he thought to be marijuana plants. Silas told appellant to close the trailer and come into the station. Silas then called the Suwan-nee County Sheriff.
The Sheriff arrived, looked into the trailer, and observed the marijuana plants. After receiving Miranda warnings, appellant told the Sheriff that he had been given $400 to come to Sarasota, rent a U-Haul trailer and leave it hooked to his truck. He told the Sheriff that for a period of time the truck and trailer were out of his possession. The rig was taken, brought back, and he was supposed to have received another $400 when he got back to Atlanta, Georgia. Appellant told the Sheriff that he knew it was a “shady deal” by the way “they wanted to do things by being secret.” *512 Appellant denied any knowledge that there was marijuana in the trailer and asked the Sheriff if the charge was serious. The Sheriff later counted 164 potted, growing marijuana plants in the trailer with a total dry weight of 32 or 36 ounces.
Appellant testified in his own defense. He stated that he was living in Atlanta, Georgia, but that his family lived in Bra-denton, Florida. He had met a man named Bill in an Atlanta bar who struck up a conversation with appellant about Braden-ton and about appellant’s new truck. After talking for approximately 45 minutes, appellant agreed to go to Bradenton, rent a trailer, and pick up some furniture for Bill. Bill advanced appellant $400 and told him he would receive another $400 upon delivery. Appellant was to go to Bradenton and park the truck and rented trailer in a certain shopping mall at a certain time. He was to leave the truck key under the floor mat and go inside the mall for two hours. Although appellant was somewhat suspicious about this arrangement and thought it was “just a little bit” shady, he testified that he did not think he was doing anything illegal. He denied any knowledge of the marijuana in the trailer. Appellant did not head directly back to Atlanta because he heard that there was a snowstorm there. Instead, he headed for Tallahassee to see an old girlfriend and thereby ended up at the I — 10 agricultural inspection station.
Appellant was in constructive rather than actual possession of the marijuana. Cases of this kind generally turn on whether the constructive possession is determined to be exclusive or joint. This is so because that determination dictates the State’s burden of proof on the issue of a defendant’s guilty knowledge. As this court said in Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967):
[T]he State must establish beyond a reasonable doubt that the accused knew of the presence of the narcotic drugs on premises occupied and controlled by him, either exclusively or jointly with others. If the premises on which the drugs are found are in the exclusive possession and control of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over them may be inferred. Although no further proof of knowledge by the State is required in cases of exclusive possession by the accused, the inference of knowledge is rebuttable and not conclusive. If the premises on which the drugs are found is not in the exclusive but only in the joint possession of the accused, knowledge of the drugs’ presence on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements and circumstances from which a jury might lawfully infer knowledge by the accused of the drugs’ presence on the premises.
Id. at 120-121. Appellant contends that the instant case involves joint possession because of claimant’s uncontradicted testimony that the trailer was out of his presence and control when it was loaded by others.
Appellant relies on Sindrich v. State, 322 So.2d 589 (Fla. 1st DCA 1975). Sindrich involved a somewhat similar fact situation, and this court held that the evidence did not permit an inference of knowledge sufficient to sustain a verdict of guilt. Appellee, on the other hand, argues that Brayton v. State, 425 So.2d 88 (Fla. 1st DCA 1982), rev. denied, 434 So.2d 886 (Fla.1983), should control the instant case. Brayton also involved a somewhat similar fact situation, but Brayton distinguished Sindrich on the issue of exclusive control or access[1] and affirmed Brayton’s convic *513 tion. We find the facts of the instant case distinguishable from both Sindrich and Brayton because, inter alia, appellant here admitted that the transaction involved was “shady.”
The doctrine of “willful blindness” (also called “deliberate ignorance”) is well established in federal criminal law. See, e.g., United States v. Aleman, 728 F.2d 492 (11th Cir.1984); United States v. Del Aguila-Reyes, 722 F.2d 155 (5th Cir.1983). An extensive discussion of the doctrine and its derivation is contained in United States v. Jewell, 532 F.2d 697 (9th Cir.), cert. denied, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). “[T]he rule is that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.” 532 F.2d at 700 (quoting from G. Williams, Criminal Law: The General Part, § 57 at 157 (2d Ed.1961)).[2]
Although our research has uncovered no Florida cases addressing or utilizing the doctrine of willful blindness, we think this doctrine is applicable to constructive possession cases. In the instant case, appellant’s admissions make it clear that his suspicion concerning the transaction was aroused. We think that these admissions together with the other circumstances present in this case indicate that appellant deliberately chose to remain in ignorance. See United States v. Suttiswad, 696 F.2d 645 (9th Cir.1982); United States v. Murrieta-Bejarano, 552 F.2d 1323 (9th Cir.1977). Thus, we find that there was sufficient evidence for the jury to find knowledge on the part of appellant, and that this is true whether the constructive possession involved in the instant case is described as exclusive or joint.
AFFIRMED.
MILLS and WIGGINTON, JJ., concur.

. In distinguishing Sindrich, the Brayton court stated:
Sindrich v. State, 322 So.2d 589 (Fla. 1st DCA 1975), on which appellant places particular emphasis, is distinguishable on the issue of exclusive control or access. In that case "[t]he uncontradicted evidence before the jury was that the truck was loaded out of [defendants'] presence, that they did not have a key to *513 the locked cargo area, and that they did not know of the contents." 425 So.2d at 89.

. The scope and outer limits of the doctrine of willful blindness are nicely summed up by Professor Williams:
The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law. It is, at the same time, an unstable rule, because judges are apt to forget its very limited scope. A court can properly find wilful blindness only where it can almost be said that the defendant actually knew. He suspected the fact; he realized its probability; but he refrained from obtaining the final confirmation because he wanted in the event to be able to deny knowledge. This, and this alone, is wilful blindness. It requires in effect a finding that the defendant intended to cheat the administration of justice. Any wider definition would make the doctrine of wilful blindness indistinguishable from the civil doctrine of negligence in not obtaining knowledge.
532 F.2d at 700 n. 7 (quoting from G. Williams, supra, at 159).