131 F.3d 149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cristela Marilu GONZALEZ, Defendant-Appellant.
 No. 97-50011.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1997.**
Filed Nov. 18, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California William J. Rea, District Judge, Presiding.
 
 
 2
 Before: BROWNING, BRUNETTI, and FERNANDEZ, Circuit Judges
 
 
 3
 MEMORANDUM*
 
 
 4
 The district court judge properly instructed the jury, consistent with United States v. Jewell, 532 F.2d 697, 700 (9th Cir.1976) (en banc), that it could find that the defendant acted knowingly if it found that she "was aware of a high probability that the treasury checks which she accepted for deposit were stolen or contained a forged endorsement and deliberately avoided learning the truth." A deliberate ignorance instruction is not appropriate in every case where the defendant's knowledge is at issue, but is properly given when there is evidence that the defendant was suspicious but chose not to discover the truth to avoid having actual knowledge. See, United States v. Baron, 94 F.3d 1312, 1317 (9th Cir.1996). This is such a case.
 
 
 5
 The bank where the defendant worked had a policy of not accepting third party checks. Tellers could accept such checks only if they received management approval, and only if the named payees presented identification and endorsed their checks at the bank in the presence of the teller. During her initial interview, the defendant was warned she would likely encounter attempts at "customer impersonation" (forgery); and that people "up to no good, would immediately spot her" as the "new kid on the block" and try to befriend her for the purpose of taking advantage of her inexperience.
 
 
 6
 Bank tellers were trained to adhere to the bank's third party check policy and told that this rule was designed to ensure that endorsements were made only by the true owner of the check. Tellers were also told the bank's policy was especially strict for treasury checks.
 
 
 7
 Although the defendant received special training on the likelihood of attempted forgery, the bank's third party check policy, and the policy underlying it, she admitted that she knowingly violated that policy. The defendant also admitted that Cruz paid her $2000 for her assistance in depositing the checks. Accepting money from customers was a clear violation of another well known bank policy.
 
 
 8
 Furthermore, although the defendant was trained as a teller to examine every endorsement, she told one of the postal inspectors investigating her case that she never looked at the endorsements on the checks she deposited for Cruz, but looked only at their amounts to make sure that Cruz had filled out and totaled the deposit slips correctly.[1]
 
 
 9
 The defendant revealed her suspicions about the checks, asking Cruz whether all of the payees had actually signed their checks and why none of the payees could come to the bank themselves to show identification and endorse their checks over to Cruz. Although the defendant claimed to have believed Cruz when he told her that the payees had endorsed their checks and that none of them could come to the bank because all seventy-one (71) either had no identification or left the country before they could cash their checks. The evident implausibility of these explanations supports rejection of the defendant's argument that there was insufficient evidence of deliberate ignorance to go to the jury.
 
 
 10
 Finally, the defendant's conversations with her fiance and fellow teller, together with testimony about her efforts to conceal the fact that she had accepted the checks in contravention of bank policies[2] provide further evidence that she suspected the checks were forged or stolen but accepted them nonetheless.
 
 
 11
 Although the deliberate ignorance instruction may increase the risk that the jury may convict based on a negligence standard, that risk was minimized here by the district court's specific admonition that the jury should not find knowledge "if you find that the defendant actually believed that the checks were not stolen and that the payees each endorsed the checks or if you find that the defendant was simply careless."
 
 
 12
 AFFIRMED.
 
 
 
 **
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir. R. 34-4 and Fed. R.App. P. 34(a)
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Had the defendant investigated the matter further, she might have discovered the checks had a number of very suspicious characteristics. Several of the "payee endorsements" were incomplete or inaccurate and Cruz had failed to sign one of the checks. In addition, many of the checks were issued on the same dates and to payees living in the same geographical area (characteristics consistent with postal robbery)
 
 
 [2]
 The defendant intentionally left her teller stamp off deposit slips, intentionally failed to ask a supervisor for approval, wrote "in person" on some checks although none of the payees actually came to the bank, and forged her supervisor's signature