JOURNAL ENTRY AND OPINION
Arthur McKoy ("appellant") appeals his conviction for aggravated theft in violation of R.C. 2913.02(B) entered by a jury verdict in Cuyahoga County Common Pleas Court. For the reasons stated below, we affirm.
The facts giving rise to this appeal are as follows. Twenty-five to thirty years ago, appellant founded a grass-roots organization, Black on Black Crime, Inc. ("BBCI"), with a stated mission to draw attention to black on black crime and violence in the inner city community and beyond, to help make the community safer, to provide positive support programs for young people and to help the victims of violence through educational programs and active involvement. In 1994, this organization was incorporated to gain non-profit status. Appellant's main job within the organization was field operations; he was the "front line" person in charge of getting the organizations message out to the public. Financial responsibility for the organization rested with the chairman and treasurer, Abdul Hasan. In 1996, one activity undertaken by BBCI was a tutoring program, "Because We Care," administered by Janice Smith with matching grant funds from the City of Cleveland. Smith also became treasurer of Black on Black and her name went on to the bank signature cards along with appellant's and Abdul Hasan's because she was the "business type." To facilitate the electronic transfer of these grant funds from the City of Cleveland to Black on Black's checking account at KeyBank the organization was assigned a vendor number by the City.
On April 1, 1997, the City of Cleveland inadvertently instructed National City Bank to wire transfer $617,596.99 to the vendor number representing the checking account of Black on Black Crime, Inc. at KeyBank. Sometime in April or May, Hasan went into the Euclid/Windermere KeyBank branch and inquired as to the balance of the Black on Black account. He was informed by Gwen Wren, an account associate, that the balance in the Black on Black checking account was somewhere around six hundred thousand dollars. Hasan expressed amazement and was informed that the source of the money was a federal wire transfer from the City of Cleveland, National City Bank. Ms. Wren advised Hasan that if he needed further verification regarding the funds he should contact National City Bank. In the normal course of business, KeyBank sends a "customer advice" which shows the sequence number, the amount of transfer and the originator of the transfer to the address on the account regarding a wire transfer. The City of Cleveland received verification from National City Bank that the requested transfer had been effected to the Black on Black account at KeyBank. Although at the time of trial no evidence remained to demonstrate that such a customer advice was sent to Black on Black by KeyBank, it is undisputed that the address on the account was 14685 Euclid Avenue, the address of appellant's business, Superfly I Barbershop. Ms. Wren testified that she recommended to Hasan that the group consider placing the money into a higher interest bearing vehicle.
Appellant testified that when Hasan informed him of the incredible balance in Black on Black's account, he directed Hasan to verify that the funds were really in the Black on Black account and to check with an accountant and lawyer to determine what the organization should legally do with the funds. Hasan told appellant he was unable to determine the source of the money. Larry Penn, the second vice-president of the organization, testified that there was speculation by the executive committee of BBCI that the money had come as a donation from superstar athletes Mike Tyson or Albert Belle because neither appellant or Hasan were sure of its source. Appellant testified that he attempted to contact both Belle and Tyson to inquire as to whether they were the source of the donation, but his attempts were unsuccessful.
On May 5, 1997, four hundred thousand dollars was withdrawn from the Black on Black Crime, Inc. checking account and invested in a "Jumbo" certificate of deposit earning interest. Penn testified that after Washington and Hasan met with an attorney regarding the money, the committee came up with ideas that would do good in the community within the framework of the goals of Black on Black. Then, on May 28, 1997, the jumbo certificate of deposit was redeemed over the signatures of appellant and Hasan. Appellant told Penn the reason that money had to be distributed into different accounts was because a non-profit organization could not hold an interest bearing jumbo certificate of deposit. The executive committee of Black on Black decided to set up four charitable programs and place the money in accounts for the programs which were designed to help the people, the children, the elderly, the homeless. It was agreed in the executive meetings that Hasan would be in charge of the money. Four people were assigned to run the programs, but appellant was already too busy running his businesses and focusing on Black on Black to run another program himself. Therefore, the funds from the jumbo certificate of deposit and checking account were disbursed into four personal cashier's checks: $135,000 to Derrick Washington to assist in his insurance company, Excellent Insurance; $235,000 to Abdul Hasan for a construction company; $135,000 to Larry Penn to supply rides for families of incarcerated individuals through "Fun Tours"; and $85,000 to Eric Novell for a bonding company. Penn testified that he believed the group was operating under the presumption that the money came from somewhere that it was allowed to come from and they checked with a lawyer regarding the disbursement for the projects. However, significant amounts of these monies were ultimately dissipated by these four members of this non-profit organization for personal use. Appellant was upset when he learned that Washington and Penn had purchased vehicles with the money and he advised the members that the vehicles should be returned and no further vehicles should be purchased. Appellant cautioned the group that if someone came looking for the money the organization would need to have the money to return it to the proper party.
On August 27, 1997, the City of Cleveland discovered its error and demanded that Black on Black repay the $617,596.99. Appellant, Hasan, Penn, Washington met with an attorney and discussed a potential payment plan consisting of four $150,000 payments to the City with the first payment to be made on September 8th However, Mary Jackman, the treasurer for the City of Cleveland, rejected the proposed repayment plan because she did not believe that the group was able to deliver all the money. On September 8th because the group believed the first payment was due, Penn, at the direction of appellant and Hasan, obtained a certified check for $77,000 and gave it to an officer at the Justice Center and turned in the which he had purchased with the funds; Hasan turned in the vehicle he had purchased to the Fourth District Police Station; and counsel turned in $20,000. That day, the police arrested appellant.
On October 30, 1997, appellant, among the others, was indicted on a single count of "grand theft," from May 28 to September 5, 1997 in violation of R.C. 2913.02(B). Appellant entered a plea of not guilty to the charge against him and the matter went to trial with three co-defendants: Abdul Rahion Ali Hasan, Derrick Washington and Black on Black Crime, Inc. (the non-profit, corporate defendant). Larry Penn testified for the state in exchange for not being indicted. The jury returned its verdicts of guilty as charged in the indictment against appellant, Hasan, Washington and Black on Black Crime Inc. Appellant was sentenced to a two year term of imprisonment. Appellant's requests for release pending appeal were denied by both the trial court and this court. This appeal follows in which appellant advances five assignments of error for our review.
 I. THE TRIAL COURT ERRED IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION WHEN INSTRUCTING THE JURY ON "DELIBERATE IGNORANCE" WHERE THE INSTRUCTION WAS INAPPROPRIATE AND NOT IN PROPER FORM.
 II. APPELLANT McKOY'S CONVICTION FOR GRAND THEFT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION WHERE THE PROSECUTION FAILED TO PROVE APPELLANT PURPOSELY INTENDED TO DEPRIVE THE CITY OF CLEVELAND OF PROPERTY OR KNOWINGLY OBTAINED OR EXERTED CONTROL OVER CLEVELAND'S PROPERTY.
 III. THE TRIAL COURT ERRED IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION WHEN INSTRUCTING THE JURY PURSUANT TO R.C. § 2913.01(1) AND (2) WHERE IT WAS NOT CONTROVERTED THAT ONLY "MONEY" WAS THE SUBJECT OF THE THEFT.
 IV. ARTHUR McKOY WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO OBJECT TO THE R.C. § 2913.01(1) (2) JURY INSTRUCTIONS OR REQUEST THE PROPER INSTRUCTION.
 V. THE CONVICTION AGAINST ART McKOY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE WAS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
 I.
In his first assignment of error, appellant complains that the the trial court committed reversible error in giving an instruction on "deliberate ignorance" based upon United States v.Jewell (1976), 532 F.2d 697 and presents three arguments asserting that the "Jewell instruction" was both inappropriate and erroneous in form.
A "deliberate ignorance" instruction may be used when an individual participates in, but closes his eyes to the obvious risk that he is engaging in unlawful conduct. United States v.Sarantos (C.A.2, 1972). 455 F.2d 877, 881. Such instruction "should not be in every case in which a defendant claims lack of guilty knowledge, but should only be given "when there is evidence that the defendant has his suspicions aroused but then * * * deliberately omits making inquiry in order to avoid having actual knowledge.' United States v. Aquilar, 80 F.3d 329, 331
(C.A.9, 1996) (en banc)." United States v. Baron (C.A.9, 1996),94 F.3d 1312, 1317. The "substantive justification for the rule is that deliberate ignorance and positive knowledge are equally culpable." Jewell, supra, 700. "To act knowingly, therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question. Id.
One element of the charge lodged against appellant requires the state to prove that he "knowingly" deprived the owner [the City of Cleveland] of its money. Thus, by giving the Jewell
instruction, the state could complete its burden of proof by proving, beyond a reasonable doubt, that "if the defendant was not actually aware of his ignorance in that regard was solely and entirely a result of his having made a conscious purpose to avoid learning the truth." Jewell, supra, 700.
"`A court can properly find willful blindness only where it can almost be said that the defendant actually knew. He suspected the fact; he realised [sic] its probability; but he refrained from obtaining the final confirmation because he wanted in the event to be able to deny knowledge.' G. Williams, Criminal Law: the general part, [Chapter] 57 at 159, 2d Ed. 1961." Jewell,supra, fn. 7. A Jewell instruction should only be given in the comparatively rare cases where there are facts that point in the direction of deliberate ignorance of criminal activity. SeeUnited States v. Murrieta-Bejarano (C.A.9, 1977), 552 F.2d 1323,1325.
 A.
First, appellant claims that at trial the state argued that he had both direct and circumstantial knowledge of the origin of the money. Then, in reliance on United States v. Baron (C.A.9, 1996),94 F.3d 1312 and United States v. Sanchez-Robles (C.A.9, 1991),927 F.2d 1070, appellant claims that if the evidence demonstrates that he had either actual knowledge or no knowledge at all of the facts in question, the Jewell instruction should not have been given. We find the factual circumstances of both Baron andSanchez-Robles to be distinguishable from the matter before us and find appellant's argument on this point to be without merit.
In United States v. Sanchez-Robles, supra, Sanchez-Robles was convicted of transporting marijuana in her van. She denied knowledge of the presence of the marijuana, despite the overwhelming odor of the drug. The court instructed the jury that the government could satisfy its burden of proof as to guilty knowledge by proving beyond a reasonable doubt that although she was not actually aware that there was a controlled substance in the vehicle at the time of her arrest, she nevertheless was aware of a high probability that the vehicle contained a controlled substance, and her ignorance of the presence of a controlled substance was solely and entirely a result of her having made a conscious effort to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth. On appeal, the court reversed her conviction finding the Jewell
instruction to be inappropriate because there were no circumstances to arouse in Sanchez-Robles' mind a suspicion of illegal activity aside from the strong odor in the van and because that odor, if recognized, would establish only her actual knowledge of illegality and not deliberate ignorance. Thus, the appeals court determined that the Jewell instruction is not appropriate where the only evidence alerting the defendant to the high probability of criminal activity is direct evidence of the illegality itself.
In United States v. Baron, supra, the appeals court reversedBaron's conviction finding that the government presented no evidence of deliberate ignorance on Baron's part where drugs were found in the right rear panel of the car he was driving which were readily accessible by reaching into the rear panel of the car. The facts and circumstances presented by the government to show that Baron "closed his eyes to the fact that he was transporting contraband" consisted of his agreeing to drive the car from L.A. to Phoenix under suspicious circumstances by an individual described either as a good friend or merely an acquaintance who contacted him in the middle of the night. The car was to be dropped off either at the acquaintance's place of employment or the airport but Baron could relate no instructions nor explain how he came into possession of the car or the keys. In addition, Baron acknowledged a strong fruit smell in the car but did nothing to check it out. Finally, although unemployed,Baron had receipts indicating cash purchases of $13,000 during his period of unemployment; in reversing Baron's conviction, the appeals court determined that unlike the circumstances found inJewell, supra, there was no that Baron was aware of the existence of the secret compartment in the vehicle, nor was there evidence that Baron suspected that the car owner was involved in drug trafficking. "Quite simply, there is no evidence that Baron
"had his suspicions aroused' Aquilar, 80 F.3d at 331, much less that he "deliberately omitted making inquiry in order to avoid having knowledge.' Id." Baron, supra, 1318.
In Jewell, however, as in the matter before us, there was both circumstantial evidence of actual knowledge and evidence that the defendant deliberately avoided positive knowledge to avoid responsibility. See Jewell, supra, 699. Here, upon a thorough review of the record, we find no evidence to support appellant's assertion that either he had actual knowledge of the source of the money or no knowledge at all. Further, appellant claims that the evidence does not suggest he avoided taking steps to confirm or deny suspicious criminal activity but he asserts that the record is replete with examples of his attempts to prevent criminal activity by requesting that his colleagues "make sure that everything is legal." On the other hand, in support of their assertion that the Jewell instruction was warranted, the state points to the following evidence: 1) both direct and circumstantial evidence showed that appellant had knowledge of the origin of the money; 2) appellant claimed lack of knowledge of the origin of the money offering alternative explanations without justification; 3) although he had the opportunity to question the source of the money while at the bank on the day he withdrew the money, appellant failed to obtain confirmation of the source; and 4) the extremely unusual amount of the deposit would indicate that the source was neither a gift nor a grant.
Therefore, we find the circumstances found in Sanchez-Robles or Baron to be distinguishable from the circumstances here. This record demonstrates that appellant had his "suspicions aroused" that the funds which he withdrew from the account were not the property of Black on Black Crime, Inc. because: 1) prior to the wire transfer made by the City, BBCI never had more that $3,900 in its checking account; 2) the significant amount of the federal wire credit to the BBCI account clearly put appellant on notice that the funds were from another source; 3) the unusual amount credited to account, $617,596.99, did not comport with an amount which one might expect be typically given as a gift or donation to a charitable group; 4) there was no evidence to suggest that the fed wire credit to the account was a donation from an outside benefactor; 5) appellant signed a corporate resolution that the windfall was a "grant," even though there was no evidence to suggest that the fed wire credit was grant money; and 6) finally, appellant's own comments as verified by the state's witness and appellant himself, demonstrate that appellant acknowledged the money would have to be repaid if "someone came looking for it."
Therefore, when we consider the evidence presented, we find that the state offered sufficient evidence to demonstrate the first requirement for a Jewell instruction: appellant's "suspicions were aroused" that the funds which were deposited into the BBCI account did not belong to BBCI.
Further, the evidence in the record suggests that appellant refrained from taking steps to determine the ownership of the funds even though his suspicions were aroused that the funds did not belong to BBCI. The evidence reveals that KeyBank was able to identify the source of the funds. Appellant dealt with the bank employees during the transaction on May 28th during which the funds were distributed to others. Although appellant had his suspicions aroused that the funds were not the property of BBCI, the record demonstrates he failed to verify the source of the funds. By this failure to ask the question, appellant avoided actual knowledge of the ownership of the funds. Thus, the state offered sufficient evidence to support the conclusion that appellant deliberately avoided taking steps to confirm the true ownership of the money, the second requirement for the Jewell
instruction.
Accordingly, because sufficient evidence was presented at trial which could support the conclusion that appellant had his "suspicions aroused" that the funds in the BBCI checking account were not the property of BBCI and sufficient evidence was presented to show that appellant deliberately omitted making the inquiry as to the source of the funds in order to avoid final confirmation that the funds were not the property of BBCI, then a Jewell instruction was warranted.
 B.
Next, in this assigned error, appellant complains that theJewell instruction, as given, was erroneous in form. Specifically, appellant complains that the instruction failed to comport with the mandate of Jewell because it failed to mention "an awareness of high probability" of criminal activity and it failed to address the question of whether appellant held an actual belief the money was legally obtained by BBCI.
Pursuant to the mandate of United States v. Jewell, supra, the deliberate ignorance instruction requires that: 1) the required guilty knowledge be established if the accused is aware of a high probability of the existence of the fact in question (here, that the funds belonged to someone other than BBCI); and 2) unless he or she actually believes that the fact does not exist. Id. at 704, n. 21.
In this case the jury was instructed:
 You may further find that the defendants acted knowingly if you find beyond a reasonable doubt that they deliberately closed their eyes to what they had reason to believe were the facts. Carelessness or negligence or foolishness on their part is not the same as knowledge and is not enough to convict.
Appellant argues that this instruction relieved the state of its burden to prove beyond a reasonable doubt an essential element of the offense. We do not agree. Although this instruction fails to use the terminology "high probability," it requires the jury to find "beyond a reasonable doubt" that appellant deliberately avoided knowing what he had "reason to believe," to wit: that the funds did not belong to BBCI. Proof "beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs. 4 Ohio Jury Instructions (1997), sections 401.10 and 403.50. The instruction given here required the jury to use the highest standard of proof to make the finding that appellant acted "knowingly." Thus, the jury was required to find that appellant had reason to believe beyond a reasonable doubt that the funds did not belong to BBCI, yet he disposed of the funds. Moreover, in this instruction the jury was cautioned that carelessness, negligence or foolishness is not the same as knowledge and is not enough to convict. As such, this instruction did not relieve the state of its burden to prove the elements of the offense beyond a reasonable doubt. Therefore, appellant has shown no prejudice based upon the wording of the instruction.
Second, appellant complains that the instruction as given failed to include the phrase "unless the defendant actually believed that the funds were legally obtained." The evidence revealed that appellant offered various theories for how the funds came into the possession of BBCI. Moreover, appellant's own testimony demonstrates that he did not hold an "actual belief" that the funds in the account belonged to BBCI. The evidence revealed that appellant knew the money would need to be returned if the owner asked for it back. Thus, in this case, because the evidence did not demonstrate that appellant actually believed that the funds were legally obtained, failure to include this phrase in the instruction would not constitute prejudice to appellant.
 C.
Finally, appellant complains that the Jewell instruction given created a presumption of knowledge. We do not agree. The instruction did not create a presumption of knowledge where the jury was asked to determine whether the state presented facts and circumstances which demonstrate beyond a reasonable doubt that appellant either knew or deliberately chose not to find out the true owner of the funds in the BBCI account before he released the funds. See State v. Smith (June 15, 1995), Cuyahoga App. No. 67524, unreported.
Accordingly, we find that the jury was instructed on each element of the offense of aggravated theft as set forth in R.C.2913.02(B) and the jury was properly instructed that each element of the charge must be proven beyond a reasonable doubt. Therefore, we find sufficient evidence exists in the record to support a Jewell instruction and the instruction given, although not as comprehensive as the instruction given in Jewell,
was sufficient to safeguard appellant's constitutional rights. Appellant's first assignment of error is without merit.
 II.
In his second assignment of error, appellant contends that his conviction is not supported by sufficient evidence. Specifically, appellant claims that he was improperly convicted because as president of the organization he failed to prevent the embezzlement of the others. Appellant asserts that the state failed to prove that he purposely intended to deprive the City of Cleveland of property or that he knowingly obtained or exerted control over Cleveland' s property.
When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational fact finder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt.Jackson v. Virginia (1979), 443 U.S. 307, 309. 61 L.Ed.2d 560,99 S.Ct. 2781; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus; see, also, State v. Eley
(1996), 77 Ohio St.3d 174, 179, 672 N.E.2d 640. The test for sufficiency is whether the evidence is legally sufficient to support a jury verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.
R.C. 2913.02 provides:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat.
 (B) Whoever violates this section is guilty of theft. * * * If the value of the property or services stolen is one hundred thousand dollars or more, a violation of this section is aggravated theft, a felony of the third degree. * * *
The required mens rea of the criminal offense of theft is "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Thus, to obtain a conviction the state was required to present evidence sufficient to show that by withdrawing the funds from the BBCI account, appellant knowingly (or in this case, with a conscious avoidance of the facts), regardless of his purpose, deprived the owner of its property.
The gist of a theft offense is the wrongful taking. State v.Shoemaker (1917), 96 Ohio St. 570, 572. "The important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." State v. Rhodes (1982), 2 Ohio St.3d 74,76. Appellant in this assigned error claims that the state failed to produce evidence that he had the "purpose to deprive" the City of Cleveland of its money. Appellant contends that the term "deprive" as used in R.C. 2913.02(A) and defined in R.C.2913.01(C) may only be defined as put forth in subsection (3), which provides as follows: to accept, use, or appropriate money, property, or services with purpose not to give proper consideration in return therefore, and without reasonable justification or excuse for not giving proper consideration.
Appellant argues that he never personally accepted, used or controlled the money. We find appellant's argument to be without merit. As will be discussed more fully in our analysis undertaken is assignment of error three, we find that we need not limit the definition of "deprive" to that definition which uses the term "money" because the funds belonging to the City of Cleveland were clearly the property of the City of Cleveland and it can be shown that appellant disposed of that property in a manner in which he knew the money would be disposed of and, once the money was disposed, it would be unlikely for the City to be able to recover those funds.
Appellant further contends that he never exerted control over the money in his individual capacity, because the funds were in the BBCI account and were transferred directly to the others. He further claims that he never personally possessed the funds nor benefited from them. We find appellant's argument to be without merit. Appellant clearly had control of the funds when he, by his signature, caused the funds to be withdrawn from both the certificate of deposit and the BBCI checking account and he authorized the bank to distribute the funds to Hasan, Penn, Washington and Norvell.
Finally, appellant contends that the evidence was insufficient to prove that he acted "knowingly." As discussed in our analysis of appellant's first assigned error, sufficient evidence exists in the record to warrant a "deliberate ignorance" instruction where, as here, a defendant asserts ignorance but the evidence demonstrates that the defendant had his suspicions aroused but deliberately chose to remain ignorant of the facts. See Jewell,supra.
Accordingly, when we view the evidence in a light most favorable to the state, we find the evidence presented is legally sufficient on each element of the crime of theft to support a jury verdict as a matter of law. Appellant's second assignment of error is without merit.
 III.
In his third assignment of error, appellant complains that the trial court committed plain error in its instruction to the jury made pursuant to R.C. 2913.01(C)(1) and (2) because each subsection relates only to "property" but the subject matter of this theft offense was "money." Appellant claims that because money was the only subject of the theft offense the only definition of "deprivation" which should have been considered by the jury is that set forth in R.C. 2913.01(C)(3). Specifically, appellant asserts that because the jury "probably found [him] guilty by utilizing R.C. 2913.01(C)(1) or (2) the outcome of the trial would have been different had the jury only considered R.C.2913.02(C)(3)." Appellant claims that since the only section which relates to money as the object of theft is R.C.2913.02(C)(3), then the court committed plain error when it instructed the jury as to the definition of "deprive" as defined in (C)(1) and (C)(2). We find appellant's arguments to be without merit.
Crim.R. 30 governs instructions to the jury and the type of record necessary to preserve an error for review by this court. Relevant to appellant's assigned error is subsection (A), which provides, in part:
 On appeal, a party may not assign as error the giving * * * [of] any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
In this case, appellant did not object to the trial court's phraseology and, as such, any claimed error is waived on appeal. See State v. Underwood (1983), 3 Ohio St.3d 12, 13,444 N.E.2d 1332. Nonetheless, a criminal defendant's failure to object is reviewable if the error amounted to plain error under Crim.R. 52(B). In order to be reviewable by this court, however, appellant must show that the outcome of the trial would have been different if the claimed error had not occurred. Underwood, supra
at the syllabus. Under Crim.R. 52(B), we have discretion to recognize "plain errors or defects affecting substantial rights although they were not brought to the attention of the court." Notice of plain error under Crim.R. 52(B), however, is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Thus, an alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." Id.,
paragraph two of the syllabus.
In this case, the court instructed the jury as follows:
 Deprive means to, one, withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration.
 Two, dispose of money [sic] so as to make it unlikely that the owner will recover it.
 Three, accept, use or appropriate money, property or services with purpose not to give proper consideration in return therefore, and without reasonable justification or excuse for not giving proper consideration.
Even were we to accept appellant's cogent analysis and application of the principal of expressio unius est exclusioalterius to the statutory definition of "deprivation" as set forth on appeal, we do not find that the jury instruction as given such an obvious and prejudicial error which if permitted to stand would affect in a material and adverse manner the character of and public confidence in judicial proceedings. See State v.Carter (1985), 23 Ohio App.3d 27, 28.
The evidence in this case demonstrates that this is not a situation where a thief has taken cash from the cash drawer or money from the victim's wallet but, instead, is one where the value of funds in a bank account was taken by one who was not the owner of those funds. It is undisputed that the funds represented by the certificate of deposit and funds deposited into the BBCI checking account were the property of the City of Cleveland. It is undisputed that those funds were disposed of by appellant over his signature authorizing the bank to issue cashier's checks to other individuals who were plainly not the owners of the money. It is undisputed that appellant disposed of the funds with his understanding that the funds were to be used for the charitable purposes as contemplated by Black on Black, Inc., thus, making it unlikely that the true owner of the funds could recover them. Thus, the evidence presented was sufficient to show that appellant disposed of the property of another making it unlikely that the owner would recover it. Accordingly, we find that the jury instruction which included the definition of "deprive" as found in R.C. 2913.02(C)(1) and (C)(2) did not constitute error. Appellant's third assignment of error is without merit.
 IV.
In his fourth assignment of error, appellant asserts that he was denied effective assistance of counsel because counsel failed to object to this instruction.
To prevail on a claim of ineffective assistance of counsel, a defendant must show that: 1) there was a substantial violation of any of defense counsel's essential duties to his client; and 2) defendant was materially prejudiced by counsel's ineffectiveness.State v. Lytle (1976), 48 Ohio St.2d 391, 396-397,358 N.E.2d 623. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington (1984),466 U.S. 668, 694, 80 L.Ed.2d 674, 104 S.Ct. 2052. In reviewing a claim of ineffective assistance of counsel, a court should presume that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughnv. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
In accordance with our determination of assignment of error three, wherein we found no error in the trial court's instruction to the jury, we find that appellant was not prejudiced by the application of the plain error standard in our review of the propriety of the jury instruction given. Accordingly, we do not find counsel's performance was ineffective for failure to object to the given instruction. Appellant's fourth assignment of error is without merit.
 V.
In his fifth assignment of error, appellant contends that the verdict was against the manifest weight of the evidence claiming that the evidence weighs heavily against conviction and the jury clearly lost its way and convicted him because of his associations not because of his actions.
In State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, the court set forth the test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered * * *" See Tibbs v. Florida
(1982), 457 U.S. 31, 72 L.Ed.2d 652, 102 S.Ct. 2211. Martin,supra at 175; see, also, State v. Davis (1998), 49 Ohio App.3d 109,113.
In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines and may be taken into account by the reviewing court: 1) the reviewing court is not required to accept as true the incredible; 2) whether the evidence is uncontradicted; 3) whether a witness was impeached; 4) what was not proved; 5) the certainty of the evidence; 6) the reliability of the evidence; 7) whether a witness' testimony is self-serving; and 8) whether the is vague, uncertain, conflicting or fragmentary. See State v. Mattison (1985), 23 Ohio App.3d 10, 14,490 N.E.2d 926.
Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact is entitled to believe or disbelieve the testimony of all witnesses whether the prosecution or the defense. State v. Antill (1964), 176 Ohio St. 61,197 N.E.2d 548.
We have reviewed the entire record of proceedings before the trial court. Upon thorough consideration of the law and the evidence presented at trial, we find that there was substantial, competent, credible evidence upon which the jury could find appellant guilty of aggravated theft. When we weigh the evidence and all reasonable inferences, we conclude that the jury did not so clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. We find appellant's fifth assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI, P.J. and SPELLACY. J., CONCUR.
 ___________________________ JUDGE TIMOTHY E. McMONAGLE